Charles O'NEILL, Jr., Individually and as
Guardian Ad Litem for Sherri O'Neill,
A Minor, Plaintiff and Appellee,

v.

The BLUE CROSS OF WESTERN IOWA
AND SOUTH DAKOTA, An Insurance
Corporation, Defendant and Appellant.

Nos. 14591, 14593.

Supreme Court of South Dakota.

Argued Feb. 5, 1985.

Decided April 17, 1985.

N. Dean Nasser, Jr., Sioux Falls, for plaintiff and appellee.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellant.

WUEST, Acting Justice.

This appeal involves an action for a money judgment under a health insurance policy. The trial court upheld coverage, granting summary judgment against appellant Blue Cross of Western Iowa and South Dakota (Blue Cross) therein. The court also granted summary judgment against appellee Charles O'Neill (O'Neill), dismissing his counterclaim for punitive damages. A trial was held on the issue of specific performance of a conversion clause converting the group policy to a private converted policy, and on the issue of whether O'Neill was entitled to attorney's fees from Blue Cross. The court ruled against O'Neill on these issues, and attorney fees, and O'Neill has filed a notice of review. We affirm the trial court on all issues.

O'Neill was employed by the state of South Dakota as a correctional officer at the penitentiary. Blue Cross provides group hospitalization to South Dakota public employees. On January 22, 1979, O'Neill applied for coverage with Blue Cross asking for "family coverage." At the time, O'Neill was married to Gloria O'Neill. The couple had one child, Justin Lee, who was born on July 6, 1976. In May of 1980, the parties separated, and Mrs. O'Neill moved to Mitchell, South Dakota, taking Justin with her. The parties did not live together after their separation, although they were not divorced until July of 1982.

In May of 1981, O'Neill began cohabiting with Mary Wise and, while they have not been married, these two have lived together continuously since that time. On December 25, 1981, Mary Wise gave birth to Sherri Lynn O'Neill, the natural child of O'Neill. O'Neill acknowledged the child as his own, both orally and in writing upon her birth, and it is undisputed that he is the child's biological father. Sherri Lynn was born prematurely. Prior to her birth, O'Neill did not notify Blue Cross of any change in family status. The instant policy or "master contract" defines a family contract as a contract covering the employee, the employee's spouse and dependent children. The pertinent policy provision defining dependent children provides:

> "DEPENDENT CHILDREN" means the unmarried dependent children of the member who have not passed their nineteenth birthday and each unmarried dependent child under twenty-three years of age who is a full-time student at an accredited high school, college, vocational school, or university or an approved school of nursing, and each unmarried dependent child who is totally or permanently disabled, either physically or mentally, regardless of such child's age, provided such disability occurred prior to age nineteen, unmarried dependent children shall include stepchildren, foster children, *and adopted children who depend on the member for support and live in the household of the member in a regular parent-child relationship.* (Emphasis added.)

This policy contains a further paragraph, which provides as follows:

> 6. Change of Family Status. The member under a "Family Contract" as defined by Section I, 4., shall notify

Blue Cross and Blue Shield of any change in family status. Coverage for children born under the "family contract" shall commence at birth and cease when such child fails to qualify for coverage under Section I, 5., and the acceptance of payments for persons no longer eligible for services shall not obligate "Blue Cross and Blue Shield" to provide for such services. Member must, within thirty (30) days notify "Blue Cross and Blue Shield" in writing, of any change in family status.

Blue Cross denied coverage for Sherri O'Neill. This action was commenced and the trial court granted summary judgment in favor of O'Neill on the coverage issue.

■ Blue Cross argues that the unmarried dependent child must "live in the household of the member in a regular parent-child relationship." This construction of the policy provision defining dependent children is in error. This phrase applies to stepchildren, foster children, and adopted children "who depend on the member for support and live in the household of the member in a regular parent-child relationship." The phrase does not relate back to the unmarried dependent children of the member who have not passed their nineteenth birthday. It is agreed that O'Neill is the biological father of the child, which he has acknowledged, and clearly she is dependent upon him and has not passed her nineteenth birthday.

Under the law applicable when this child was born, a parent was obligated to support children born out of wedlock and the parents of such a child owed the child necessary maintenance, education and support. The father was liable to pay the expenses of the mother's pregnancy and confinement. SDCL 25–8–1, 25–8–2, and 25–8–3.[1]

■ The terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction, since the Court cannot make a new contract for the parties where they, themselves, have employed express and unambiguous words. 43 Am.Jur.2d, *Insurance*, § 271 (1969).

■ We do not believe the paragraph defining dependent children is ambiguous. If ambiguous, however, it would still be construed in favor of insurance and against the one who drafted the contract and caused the uncertainty to exist. *Hicks v. Brookings Mall, Inc.*, 353 N.W.2d 54 (S.D. 1984); *City of Sioux Falls v. Henry Carlson*, 258 N.W.2d 676 (S.D.1977).

■ Blue Cross claims coverage should be denied because O'Neill failed to notify Blue Cross "of any change in family status."[2] Other than the birth of this child, what should he have reported? There was no divorce, death, adoption, foster child, stepchild, remarriage, or whatever. "Any change in family status" is broad terminology. We defer our opinion, as to all the situations it may cover, until those issues are before us. In this case, however, the only matter O'Neill could have reported prior to the birth was the separation, love affair, and conception. We do not believe the phrase "change in family status" was ever intended to require a report to Blue Cross of separation, love, and conception. O'Neill is not claiming coverage for his lover, Ms. Wise. He claims it for his dependent child. When Blue Cross received timely notice of the birth of the child, they received notice of "any change in family status."

■ Blue Cross urges that public policy mandates a denial of coverage. We do not approve, condone, or condemn the relationship of O'Neill and Ms. Wise. Their child, however, should not be penalized for their conduct. She is the helpless and innocent product of their relationship. Under the

---

1. SDCL 25–8–1 and 25–8–2 were repealed by Chapter 190 of the Session Laws of 1984. SDCL 25–8–3 was amended by Chapter 190 of the Session Laws of 1984. The obligations provided by those sections were incorporated in other provisions. For example, *see* SDCL 25–8–5, 25–8–7, and 25–7–7.

2. A dependent child is covered from the moment of birth. Notice of a birth must be given within thirty days thereafter. There is no dispute that timely notice was given to Blue Cross. See paragraph 6. of "Master Contract," *supra*.

statutes previously cited, she is entitled to support. The proceeds from the policy may be paid to O'Neill; however, the child receiving the medical care is the real beneficiary of the coverage. We recognize that the father would be required to pay the medical expenses as provided by SDCL 25–8–1 and 25–8–2, if he could, but the purpose of group health insurance is to provide medical treatment for those who need it. To deprive this dependent child of coverage because society does not condone her parents' relationship would be punishing the innocent. Most people of modest means are unable to afford a catastrophic illness without health insurance. True, there may be welfare programs and medical providers willing to absorb the expense; but if they are going to remain solvent, the medical providers must of necessity apportion the expenses to other patients. Since this innocent child is the primary beneficiary of these medical services, we do not believe public policy dictates that she be denied the same. Again, we stress the child's mother is not covered, nor is the father being enriched.

■ The trial court granted summary judgment for Blue Cross on O'Neill's amended complaint seeking punitive damages. O'Neill filed a notice of review and urges us to overrule the trial court. O'Neill claims this cause of action is predicated in tort rather than contract and, therefore, judgment should not have been granted. Passing upon a similar claim in *Ochs v. Northwestern Nat. Life Ins. Co.*, 254 N.W.2d 163, 167–68 (S.D.1977), we said:

> [P]laintiff's complaints in reality state but a single claim for relief, for however one looks at the second cause of action, it sets forth an additional claim for relief based upon defendant's alleged breach of contract. True, the allegations represent an artful attempt to avoid the statutory limitation on damages for breach of contract, SDCL 21–2–1 and 21–2–2, and the statutory bar to punitive damages in claims arising out of breach of contract, SDCL 21–1–4 and 21–3–2, but at their core they are based upon defendant's breach of their contractual duty to pay benefits due under their policies. As we

read the complaints, there could be no recovery under the second cause of action unless plaintiff proved a breach of defendants' duty to make such payments. So considered, the claim set forth in the second cause of action is not of such a nature that it could have been separately enforced and thus is not a multiple claim within the meaning of RCP 54(b), *Rieser v. Baltimore & Ohio Railroad Co.*, [ (2d Cir.1955) 224 F.2d 198]; *Campbell v. Westmoreland Farm, Inc.*, 2 Cir. [ (1968) ], 403 F.2d 939; *United States v. Kocher*, 2 Cir. [ (1972) ], 468 F.2d 503, but rather is so inextricably linked to the cause of action based upon breach of contract as to constitute a single claim. *Aetna Casualty & Surety Company v. Giesow*, 2 Cir. [ (1969) ], 412 F.2d 468.

In *Thu v. American Family Ins. Co.*, 292 N.W.2d 109, 110 (S.D.1980), we held a claim for punitive damages was "nothing more or less than a claim based upon appellant's refusal to pay benefits under the terms of the insurance policy," *citing Ochs, supra*. We believe these two cases are controlling and we decline to overrule them.

A trial was held on the issue of specific performance requiring Blue Cross to offer a conversion policy covering Sherri O'Neill when O'Neill was terminated at the penitentiary, and also upon the issue of whether O'Neill was entitled to attorney fees from Blue Cross because its refusal to pay was "vexatious or without reasonable cause."

■ Paragraph 9 of the master contract between Blue Cross and the South Dakota Public Employees Insurance System provides:

> If a member leaves the group through termination of employment or termination of eligibility as a dependent, he may continue coverage under group conversion certificates currently available to subscribers of similar classification, by making payment within thirty (30) days at subscription rates and in a manner

determined by Blue Cross and Blue Shield.

On May 18, 1982, O'Neill was terminated as a state employee. He sought specific performance, requiring Blue Cross to offer a conversion policy covering his daughter, Sherri O'Neill. The trial court found that he was offered the right to convert to a private policy which fulfilled Blue Cross' obligation. On questions of fact, the "clearly erroneous" standard is applied by this court. *All Nation Ins. Co. v. Brown,* 363 N.W.2d 216 (S.D.1985); *Pope v. Brown,* 357 N.W.2d 510 (S.D.1984). At trial, O'Neill testified as follows:

THE COURT: Okay. They did offer you the same coverage you had at your own expense?

A Right.

THE COURT: Did you ask them at that time whether or not Sherri was covered?

A I had information from them that they weren't covering her previous to this offer. I was already aware that she was not included in the offer by their refusal to cover the hospitalization.

THE COURT: I suppose you got some kind of form letter saying you got so much time to convert?

A Right.

THE COURT: You never exercised that?

A No. My termination prevented me from having any further insurance.

THE COURT: You could have converted after termination, right? Within 30 days or something like that, do you remember?

A I don't remember the expiration part.

THE COURT: You may continue.

Q (BY MR. NASSER) Did you receive communication from the defendant which indicated that coverage would not be provided for Sherri?

A Yes, I did.

Q If the policy had covered the child would you have been in a position to convert this policy?

MR. THIMSEN: Objection. Immaterial. Calls for speculation, conjecture, assumes facts not in evidence.

THE COURT: Read the question back, Please.

(Last question read back by Reporter)

THE COURT: Overruled.

A. I don't believe I would have been in position to have any insurance coverage on myself or the child.

Q (BY MR. NASSER) Was Mary Wise working at that time?

A I think she was, yes.

Q Do you think or do you know?

A I am not sure. Can I ask her?

Q No.

THE COURT: She's here. She can testify if she remembers.

Q (BY MR. NASSER) Did you have the financial resources, whether through Mary or through yourself, to be able to convert that had Sherri been covered?

A No, sir.

MR. THIMSEN: Your Honor, I move to strike the answer and object for the reasons previously stated.

THE COURT: I guess I'd like to know a little bit why you object to that.

MR. NASSER: That is what I want to know.

THE COURT: Seems to me if he couldn't have converted, regardless of who they were willing to cover—

MR. THIMSEN: I will withdraw the objection then.

THE COURT: Okay, Go ahead.

In view of the foregoing testimony by O'Neill, we are unable and unwilling to hold the trial court was "clearly erroneous."

SDCL 58–12–3 provides for a recovery of attorney fees from an insurance company when the company has refused to pay the full amount of loss and such refusal is "vexatious or without reasonable cause."

 The trial court found O'Neill failed to prove by a preponderance of the evidence that Blue Cross' refusal to pay the claim for Sherri was "vexatious or without reasonable cause." The question of "whether an insurer's refusal to pay is vexatious or without reasonable cause is

necessarily one of fact[.]" *Tracy v. T & B Construction Company*, 85 S.D. 337, 343, 182 N.W.2d 320, 323 (1970); *Wilson v. Allstate Insurance Company*, 85 S.D. 553, 550, 186 N.W.2d 879, 883 (1971); *All Nation Insurance, supra.*

We hold the decision of the trial court was not "clearly erroneous."

Affirmed.

FOSHEIM, C.J., and WOLLMAN, J., concur.

MORGAN, J., concurs in result.

HENDERSON, J., concurs in part and dissents in part.

MORGAN, Justice (concurring in result).

This is not an insurance contract between O'Neill and Blue Cross; it is between Blue Cross and the Board of Trustees of the South Dakota Retirement System. O'Neill is merely a "member" of the group as defined in SDCL 3–12A–1(9) and by statute he has the option to have his dependents covered by the plan. O'Neill elected to have his dependents covered. Subsection (6) of the statute, in pertinent part, includes O'Neill's dependent as "an employee's spouse and any unmarried child (a) under the age of nineteen years ...."

The statute makes no explicit reference to either legitimate or illegitimate children and the policy cannot be drawn any narrower than the statutory authorization. Indeed, in this case, the policy is probably drawn more broadly than the statute in that it covers foster children. I do not distinguish this situation from cases involving workers' compensation or retirement benefit plans. In those cases, the United States Supreme Court has held that although classifications based on illegitimacy are not subject to "strict scrutiny," they nevertheless are invalid under the Four-

teenth Amendment if they are not substantially related to permissible state interests. *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). While not advanced as a constitutional argument, appellant suggests that it would be against public policy to extend a full complement of legal rights to unmarried cohabitants. This argument was rejected by the United States Supreme Court in *Weber v. Aetna Cas. & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

Because I am not prepared to say that I would agree with the reasoning of the majority opinion on the coverage issue, were this a strictly private contract of insurance between Blue Cross and O'Neill, I therefore concur in the result for the reasons stated. I concur with the majority opinion on the remaining issues.

HENDERSON, Justice (concurring in part, dissenting in part).

This case constitutes nothing more than an action in contract on an insurance policy.* If I, or others of like mental ilk, followed the majority opinion's powers of reasoning, a person could obtain coverage and impregnate a theoretically infinite number of women and obtain coverage for each birth. Believing that such a result, as begot by the majority's platform of legal thought, could scarcely be determined by the intent or reasonable expectation of either party to this contract, I dissent. I further dissent because the insurance company either owes an obligation to O'Neill under the insurance contract, or it does not. And all rationale for justifying coverage herein cannot be in equity or bottomed in need. The innocence of the child is immaterial to the contract provisions. The minor child is not a party to the contract and any benefit accruing under the policy

---

* Blue Cross appeals from an order granting a money judgment against it in the amount of $36,125.63, arising out of a lawsuit instituted by O'Neill against Blue Cross—for benefits under a contract of insurance. The South Dakota Public Employees Insurance System has never been privy to this litigation or appeal. O'Neill's application for insurance was submitted to Blue Cross. O'Neill refers to Blue Cross in his brief as "his insurance carrier" and submitted a claim to Blue Cross. The aforesaid system issued no policy. A tort cause of action against Blue Cross for vexatious refusal to pay and "intentional infliction of mental stress" was pleaded and ultimately dismissed. O'Neill wins under a contract of insurance with Blue Cross or he wins nothing at all.

would be paid to the father and not to the child. We cannot eradicate principles of contract law by sugarcoating it with extraneous and immaterial philosophy espoused in the majority opinion to justify coverage.

Blue Cross undertook to insure a family unit consisting of Charles O'Neill, Jr., Gloria (his wife), and Justin (his son). This family unit was set forth in O'Neill's application. A requirement existed, per the insurance contract, that Blue Cross be notified in writing within 30 days of any change in family status. O'Neill's wife and son left his abode. A different woman came to live with him and did. There were no children when she first arrived. This was a change in family status. Blue Cross had a right, under contract, to know what family it was insuring. O'Neill had no right to substitute a different family and still maintain coverage under the policy per the application he submitted. Blue Cross, out-and-out, denied coverage upon the basis that O'Neill, Ms. Wise, and Sherri O'Neill (illegitimate child) were not the family unit to which it had provided coverage pursuant to the initial application. Blue Cross is right in its legal position and I sustain its cause hereby. It is undisputed that O'Neill never notified Blue Cross of his separation from his wife, Gloria, and Justin, his son; likewise, it is undisputed that he never advised Blue Cross that he had instituted a new "family" in the marital home by cohabiting with one Mary Wise.

O'Neill takes the position that his illegitimate daughter is automatically covered under the family plan. O'Neill has never claimed any benefits for Mary Wise, the mother of his child. He professes to the Court that Mary Wise is really not a member of his family and yet his new family is covered under a family contract. It is obvious that his positions are inconsistent for, if the mother of the illegitimate child is not a member of the family or household, the illegitimate child cannot be brought within the parameters of the contract language. A child who is born, such as here, simply is not born under the family contract. For a case supporting my viewpoint, *see Potter v. Bennett*, 40 A.D.2d 546, 334 N.Y.S.2d 511 (1972).

I maintain that the introduction of a different woman into his household and the vacation by his wife and son of the household introduced a new risk that Blue Cross did not expect nor intend to cover. Once the family unit changed, Blue Cross could not be expected to insure individuals of which it had no knowledge or background. Under the majority's rationale, O'Neill could have more than one wife impregnated each year. And, under the majority's rationale, O'Neill could seek coverage for any number of women bearing his children. One would ordinarily believe that one wife is capable of bearing a child once each year. Therefore, O'Neill wishes to impose upon Blue Cross additional risks, and these risks are not anticipated nor bargained for under the language of this insurance contract. To expect Blue Cross to cover unknown pregnancies to diverse women, without providing any notice whatsoever to Blue Cross and permitting Blue Cross to make a determination of continued coverage, goes to the essence of the policy. An insurance company is entitled to know what and whom it is insuring.

The trial court erred in extending coverage under the contract and I would reverse its judgment. The majority opinion hangs its hat on several pegs which, perhaps, I have addressed, but one peg deserves greater discussion. The family contract covering O'Neill, the employee, likewise covers the employee's spouse and dependent children. As no spouse benefits are claimed, we concern ourselves with an interpretation of "dependent children." We are not blinded by a complication in this matter, for there are four separate categories of dependent children specified in the policy: (1) Unmarried dependent children under the age of 19; (2) unmarried dependent children under the age of 23 who are full-time students; (3) unmarried children totally or permanently disabled provided the disability occurred prior to age 19; and (4) a category including stepchildren, foster children and adopted children, provided these children live in the household of the employee in a regular parent-child relationship, and who depend on the employee for

support. As the reader can discern, an illegitimate child does not fall within any of these four definitions. It is true that children born into the family are automatically covered. This is commonly referred to as the "newborn clause." But this infant was not born "into the family." She was born "outside of the family." She was born when O'Neill was still married to his wife, Gloria. Newborn coverage is afforded only to children born under the family contract. O'Neill was under a family contract. When he applied for coverage, he asked for "Family Coverage." He evidenced this by an "x" placed in the appropriate box on the application. It is clear that the intent of the policy is to cover legitimate children, for maternity coverage is limited to the insured or the spouse of the insured with newborn coverage afforded to children born under the family contract. This infant child, born within a live-in relationship, is simply not a dependent child under the contract definitions.

I agree with that portion of the decision which affirms the trial court on the issue of specific performance, a denial of attorney's fees, and the nonavailability of tort remedy against Blue Cross.