**DAIRYLAND INSURANCE COMPANY, Appellant,**

v.

**Sharon WYANT, Ian Flockhart, and Sandra Flockhart, Appellees.**

**No. 17412.**

Supreme Court of South Dakota.

Argued May 21, 1991.

Decided Sept. 4, 1991.

Thomas M. Frankman, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellant.

Anthony E. Crawford, Crawford Law Office, Rapid City, for appellee, Sharon Wyant.

Leah J. Fjerstad, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for appellees, Ian and Sandra Flockhart.

SABERS, Justice.

Insurer appeals from a summary judgment requiring it to pay the punitive damages awarded against its insured.

*Facts*

On the afternoon of January 8, 1988, following a morning of heavy drinking by Sharon Wyant, her vehicle crossed the median of an interstate highway and struck the vehicle of Ian Flockhart which was traveling in the opposite direction. A jury awarded Flockhart $15,516.70 in compensatory damages and $30,000 in punitive damages. The background facts are set forth more fully in *Flockhart v. Wyant*, 467 N.W.2d 473 (S.D.1991), which upheld the award of punitive damages against Wyant. Neither the underlying facts nor the jury verdict is at issue in this appeal.

The question in this case is whether Wyant's insurer, Dairyland Insurance Com-

pany (Dairyland), is required under its insurance contract to pay punitive damages. The policy provides that Dairyland "promise[s] to pay damages for bodily injury or property damage for which the law holds you responsible because of a car accident involving a car we insure. We also promise to pay additional benefits." (Emphasis omitted). These "additional benefits" are specified in the policy and do not include payment of punitive damages. However, punitive damages are not among the exclusions listed in the policy either. Wyant and Flockhart contend that after payment of compensatory damages, which Dairyland does not contest, the balance (approximately $9500) of the policy's limit of $25,000 should be applied toward the $30,000 in punitive damages awarded against Wyant.

On October 17, 1989, Dairyland commenced a declaratory judgment action against Wyant and Flockhart to establish that it did not have to pay the punitive damages. Both Dairyland and Wyant/Flockhart moved for summary judgment. On December 5, 1990, the circuit court denied Dairyland's motion but granted the motions of Wyant and Flockhart, requiring Dairyland to pay the punitive damages up to the policy limit.

Dairyland appeals, claiming:

(1) Wyant's insurance policy with Dairyland does not provide coverage for punitive damages; and,

(2) South Dakota public policy prohibits indemnification for punitive damages.

*Coverage for Punitive Damages*

Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Breen v. Dakota Gear & Joint Co., Inc.,* 433 N.W.2d 221, 223 (S.D.1988); *Koeniguer v. Eckrich,* 422 N.W.2d 600, 601 (S.D.1988); SDCL 15–6–56(c). All parties agree that there is no material issue of fact and that the question is one of law for which summary judgment is proper.

■ Wyant's policy with Dairyland does not employ broad, categorical language such as "all damages arising from a car accident" to describe the scope of its coverage. Instead, it "promise[s] to pay *damages for bodily injury or property damage* for which the law holds [Wyant] responsible because of a car accident involving a car [it] insure[s]." (Emphasis added).

The policy defines "damages" as "the cost of compensating those who suffer bodily injury or property damage from a car accident." (Emphasis omitted). Elsewhere the policy states:

This insurance covers bodily injury, including loss of services, sickness, disease or death which results from the injury, caused by a car accident and suffered by any person.... This insurance covers property damage that results from a car accident. Property damage means any injury to or destruction of physical property, including the loss of use of that property. (Emphasis omitted).

The policy goes on to specify the kinds of medical and property repair or replacement expenses which are covered under its terms. The language of the policy is consistent with and no broader than its basic limitation, repeated throughout the policy, of "damages for bodily injury or property damage ... because of a car accident."

On three occasions the policy states: "We also promise to pay additional benefits." Each time the phrase appears, it is immediately followed, under the boldface heading "Additional Benefits," by an itemized list of such benefits, which include the payment of investigatory and legal expenses, substitute transportation, salvage charges, first aid costs, compensation for personal effects lost by fire or lightning and waiver of the deductible if both cars in a collision are insured by Dairyland.

There is no mention of punitive or exemplary damages anywhere in the policy, nor is there any allusion to a miscellaneous category of damages into which punitives might conceivably fit.

■ In short, the policy confines its coverage to compensatory or actual damages. Such damages differ from punitive damages. In South Dakota, punitive damages are awarded not to compensate an injured

party for a loss but "for the sake of example, and by way of punishing the defendant." SDCL 21–3–2. They are distinct from and "in addition to the actual damage." *Id.* They may be awarded only when there is a showing of "malice on the part of the party from whom damages are sought." *Yankton Prod. Credit Ass'n v. Jensen,* 416 N.W.2d 860, 863 (S.D.1987); SDCL 21–1–4.1.

Wyant's basis for claiming that punitive damages are included under her Dairyland policy is that they are not expressly excluded, and therefore she "reasonably expected" that they would be covered.

The "reasonable expectations" doctrine means that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Keeton, *Insurance Law Rights At Variance With Policy Provisions,* 83 Harv. L.Rev. 961, 967 (1970) (cited in *Perrine v. Prudential Ins. Co.,* 56 N.J. 120, 265 A.2d 521, 524–525 (1970)). Whether an insured's expectations are reasonable about policy coverage is normally a question of fact. 20 Proof of Facts 2d 59 (1979). Although this doctrine governs the construction of insurance contracts in nearly twenty states, *id.* at 68–71, it has not been declared law in South Dakota.

We express no judgment whether the reasonable expectations doctrine would govern the construction of an insurance contract whose terms were ambiguous or whose coverage was described in broad, categorical language that might lead a policyholder to incorrectly but reasonably conclude she had a particular kind of coverage. That issue is not before us because there is nothing ambiguous about this policy in this context. This policy confines its coverage, in plain and unmistakable terms, to compensatory damages arising from car accidents, and it would be unreasonable to expect that punitive damages might be covered merely because they were not expressly excluded.

Because we conclude that this policy provides no coverage for punitive damages, we need not reach Dairyland's second contention that South Dakota's public policy prohibits indemnification for punitive damages. This court has recently stated that "[w]ere a person able to insure himself against [the] economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be missing." *Ft. Pierre v. United Fire & Cas. Co.,* 463 N.W.2d 845, 849 (S.D.1990) (quoting *Ambassador Ins. Co. v. Montes,* 76 N.J. 477, 388 A.2d 603, 606 (1978)) (*Henderson and Sabers, J.J.,* dissenting on other grounds). However, that statement could be considered dicta because the *Ft. Pierre* majority already reached the same result in the case under a different rationale. The application of this principle of public policy to insurance contracts purporting to extend coverage for punitive damages is best left for a case where the question is squarely presented.

Reversed.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., concurs specially.

HENDERSON, J., dissents.

MILLER, Chief Justice (concurring specially).

I concur with the majority that the insurance policy provides no coverage for punitive damages.

I strenuously disagree and disassociate myself from the language in the last paragraph of the majority writing which would suggest that certain language in *Fort Pierre v. United Fire and Cas. Co.,* 463 N.W.2d 845 (S.D.1990), dealing with public policy considerations, is "dicta." To the contrary, rather than being dicta, we *specifically held* that "the award of punitive damages (against a wrongdoer's insurance carrier) would violate public policy." Id. at 849.

I remind the readers of this writing, as well as the author of the majority opinion (who was a dissenter in *Fort Pierre* ), of the precise language of our holding:

Although there is a split in authority, as a general rule, it is against public policy to allow the insured wrongdoer to shift the burden of payment of punitive damages to its insurer. Two interests implicated by an award of punitive damages are punishment to the wrongdoer and deterrence of the wrongdoer's conduct. Here, City committed the "wrong" and is attempting to shift responsibility for its actions to its insurer. To allow City to do so would allow it to act with impunity. City would not be punished, nor would it be deterred from similar actions. 'Were a person able to insure himself against economic consequences of his intentional wrongdoing, the deterrence attributable to financial responsibility would be missing.' (Citation omitted.)

Thus, because we have determined that the civil penalties prayed for by the federal government were punitive in nature and that in this instance the award of punitive damages would violate public policy, we hold that United had no duty to defend City under the policy.

*Id.* at 848.

Irrespective of the majority's suggestion to the contrary, *under our settled law, it is contrary to the public policy of this state to require an insurer to pay punitive damages based on the conduct of its insured.* (I would agree with the majority's implication that we have not yet specifically concluded whether it would violate public policy when the insurance policy specifically contains a provision that would provide coverage for punitive damages, however, that case is not now and never has been before us.) Even appellee recognizes the settled law in this state, since she asked us to reverse our holding in *Fort Pierre, supra.*

I respectfully suggest that the majority author is using the term "dicta" when referring to our *Fort Pierre* holding, to preserve or revive his prior dissent. It seems to me that it only serves to cause unnecessary confusion to the bench and bar on an issue which has already been judicially determined.

HENDERSON, Justice (dissenting).

Insurance company knew that Appellee Wyant's driving record was bad. This record consisted of previous DWI convictions. Knowing this, insurance company issued her policy and adjusted her rates upward. She was a "high-risk" driver and insurance company knew it. This insurance company solicited "high-risk" insurance clients, clients who had been involved in alcohol related accidents. Insurance company actually bargained for, and assessed the risk of claims made against these high risk drivers. It begot high premiums to place in its corporation coffers.

Reasoning that "the fine print did not take it away," because punitive damages were not excluded, the trial court held that they must be included. SDCL 32–35–70 establishes the legal responsibility that an insurer shall insure against loss from the liability imposed by law *for damages arising out of the ownership, maintenance, or use of the vehicle.* Such coverage is required of every driver or owner of a motor vehicle by SDCL 32–35–113(1).

SDCL 32–35–70 also establishes minimum policy limits. These minimum policy limits are the policy limits of Appellee Wyant's insurance policy.

It therefore appears this insurance company is writing insurance policies to avoid the intent of the State Legislature. Whose intent is dominant—the Legislature speaking as the will of the people of this state? Or the insurance company making contracts to escape the Legislative will? In construing the purpose of the Financial Responsibility Act, we stated, in dicta, in *Novak v. State Farm Mutual Auto Insurance Co.,* 293 N.W.2d 452 (S.D.1980):

The purpose behind this law is to protect against financially irresponsible persons from using our highways.

When considered in their entirety, the statutes in question establish a broader scheme of financial responsibility than the majority contemplate.

The policy before us expresses: "damages;" "damages" can be compensatory or punitive, as the majority points out. Obvi-

ously, it can be both. Therefore, the distinction, due to the generic term, is blended together by the policy's terms of addressing "damages."

Interpretation and construction principles are to be controlled by the same rules applicable to contracts generally. *Brown v. Maxey,* 124 Wis.2d 426, 369 N.W.2d 677 (1985). "As a matter of law insurance contracts should be construed like any other contract, giving effect to the expressed intentions of the parties so far as that intention is legal." *National Farmers Union Property and Cas. Co. v. Iverson,* 346 F.Supp. 660 (D.S.D.1972) (citing *Bergholm v. Peoria Life Ins. Co.,* 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416 (1932) and, W. Vance, Handbook on the Law of Insurance 808 (3d ed. 1951)). The test for governing interpretation and construction of a contract is to determine what a reasonable person in the position of the insured would have understood the words to mean. Wyant obviously believed, as a lay person, that there was coverage for "damages." It is instructive that, while differing in the precise language used, there are cases supporting the proposition that if there is an ambiguity in an insurance policy, the policyholder prevails in the interpretation of the ambiguity. The following cases support this proposition: *McGriff v. U.S. Fire Ins. Co.,* 436 N.W.2d 859, 862 (S.D.1989) (we recognize the general proposition that if a contract of insurance is fairly susceptible to two constructions (ambiguous), one of which is more favorable to the insurance than the other, the construction most favorable to the insurance should be adopted. *Id.* at 862. *See also, O'Neill v. Blue Cross of Western Iowa and South Dakota,* 366 N.W.2d 816 (S.D.1985) (ambiguous provision in policy is construed in favor of insurance and against the one who drafted the contract. *Id.* at 818). Wyant did not draft this insurance policy; it was drafted by the insurance company. See further, *Vern Eide Buick v. U.S.F. & G.,* 273 N.W.2d 116, 117 (S.D.1978) construed in manner most favorable to insured). *Accord: Dairyland Ins. Co. v. Kluckman,* 86 S.D. 694, 201 N.W.2d 209 (1972); *Presentation*

*Sisters, Inc. v. Mutual Benefit Life Ins. Co.,* 85 S.D. 678, 189 N.W.2d 452 (1971).

In *Brown v. Maxey,* cited above, the Court discussed their problem in very relevant terms:

> We now turn to the issue of whether Maxey's insurance policy provides coverage for punitive damages. Actually, there are two questions involved: (1) Whether this State Farm policy provides coverage for punitive damages under the express language of the contract, and (2) Whether such coverage, if it exists, is contrary to public policy of this State.

The decision in *Maxey* was the same as rendered by Judge Davis, namely that the issued policy provided coverage for punitive damages and that such coverage was not contrary to public policy.

In *Skyline Harvestore Sys. v. Centennial Ins.,* 331 N.W.2d 106 (Iowa 1983), the Court held that no public policy existed which prevented the interpretation of an insurance contract as including coverage of punitive damages. *Id.* at 109. The Court based this decision on the harmonization of two competing public policies: the freedom to contract and punitive damages. *Id.* The Court believed that the public policy purposes underlying punitive damages— punishment and deterrence—were not contravened. The Court did not believe that those public policy reasons would override other considerations favoring coverage of punitive damages; namely, the freedom to contract. The Court was concerned about the danger of too freely invalidating private contracts on the basis of public policy.

The Court quoted a U.S. Supreme Court case, *Waters v. The Merchants' Louisville Ins. Co.,* 36 U.S. (11 Peters) 213, 221, 9 L.Ed. 691, 695 (1837). "There is nothing unreasonable, unjust, or inconsistent with public policy, in allowing the insured to insure himself against all losses from any perils not occasioned by his own personal fraud."

The Iowa Court concluded that if insurance companies do not wish to provide punitive damages coverage, then they must exclude coverage of punitive damages spe-

cifically. Same reasoning followed by Judge Davis.

I have, heretofore, by dissent in *City of Fort Pierre*, repudiated the holding as contained in headnote 7 of that majority opinion.

Judge Davis' decision favors the will of the State Legislature. An exclusion not having been inserted, the Supreme Court of this state now adds it on. I would uphold the trial court.