2001 SD 71

**FARM & CITY INSURANCE,**
Plaintiff and Appellee,

v.

**ESTATE OF Tasha DAVIS, Defendant
and Appellant.**

No. 21644.

Supreme Court of South Dakota.

Argued Feb. 13, 2001.

Decided June 6, 2001.

Paul S. Swedlund of Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, Attorneys for plaintiff and appellee.

Rexford A. Hagg of Whiting, Hagg and Hagg, Rapid City, SD, Attorneys for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] In this declaratory judgment appeal, we hold that a drive-by shooting is not covered by the uninsured motorist coverage provision in an automobile insurance policy.

## FACTS

[¶ 2.] In July 1999, Aaron Andrews attended a party at an abandoned house in north Rapid City, South Dakota. Tasha Davis, Andrews' girlfriend and mother of his child, also attended the party, and, by all accounts, they were not experiencing any difficulties in their relationship. Andrews consumed alcohol and later in the evening became involved in a fight with

Merv LeDeux over a beer keg tap. Andrews suffered a severe beating in which he sustained facial bruising, lacerations, and was knocked unconscious.

[¶ 3.] When Andrews regained consciousness he went to a friend's home where he had a shotgun stored. After he cleaned up, he asked for the shotgun just in case LeDeux came looking for him. Andrews and his friend took a drive and met other friends on Haines Avenue. The group parked and some members of the group overheard Andrews and his brother plotting to "get" LeDeux. Some of the discussion concerned finding LeDeux.

[¶ 4.] The group returned to driving on Haines Avenue. Andrews and the friend who stored the shotgun were in one car and Andrews' brother and three others were in a second car. Andrews spotted the vehicle in which he believed LeDeux had left the party as a passenger. He sped up to catch the vehicle. Andrews drove his vehicle alongside the other vehicle, pointed and fired the shotgun at the front-seat passenger of the other vehicle. Tragically, the passenger was not LeDeux. Rather, it was Tasha Davis. The shotgun blast struck her in the base of the neck, instantly killing her. Andrews was tried and convicted of voluntary manslaughter. We affirmed Andrew's conviction. *State v. Andrews*, 2001 SD 31, 623 N.W.2d 78.

[¶ 5.] Davis' estate filed for uninsured motorist benefits under her automobile policy with Farm & City Insurance. Farm & City denied coverage claiming Davis' death did not result from the normal and proper use of Andrews' vehicle as required by Davis' policy. Additionally, Farm & City brought a declaratory judgment action seeking an interpretation of uninsured motorist coverage under South Dakota law. The issues before the circuit court were: (1) whether the shooting was an accident under the terms of the policy;

and (2) whether Davis' death arose out of the "use" of the vehicle under the terms of the policy. The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Farm & City holding that the shooting was an "accident" under the policy, but the death did not arise out of the "use" of a vehicle. Davis appeals the latter. Farm & City did not file a notice of review pertaining to the "accident" issue. We affirm.

## STANDARD OF REVIEW

[¶ 6.] We interpret provisions in an insurance policy which are " 'fairly susceptible' " to different interpretations by choosing that interpretation most favorable to the insured. *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994) (citations omitted). We will not, however, " 'seek out a strained or unusual meaning for the benefit of the insured.' " *Id.* (citing *City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845, 848 (S.D.1990) (quoting *Black Hills Kennel Club v. Fireman's Fund Indem. Co.*, 77 S.D. 503, 506–07, 94 N.W.2d 90, 92 (1959))). We read and understand insurance contracts " 'according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation.' " *Id.* (citing *Prokop v. North Star Mut. Ins. Co.*, 457 N.W.2d 862, 864 (S.D.1990) (quoting *Cheney v. Metropolitan Life Ins. Co.*, 370 N.W.2d 569, 573 (S.D.1985))). When it is necessary to review an insurance policy in light of a certain statute, we treat that statute "as if it were actually written into the policy." *Id.* at 275–76.

## DECISION

[¶ 7.] **Andrews' actions are not covered by Davis' uninsured motorist coverage.**

[¶ 7.] SDCL 58–11–9 requires that all liability insurance policies sold in this state provide uninsured motorist coverage to the insured. The statute provides in pertinent part:

No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, *unless coverage is provided therein or supplemental thereto* in limits for bodily injury or death equal to the coverage provided by such policy for bodily injury and death, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* and hit-and-run motor vehicles *because of bodily injury, sickness, or disease, including death, resulting therefrom.*

SDCL 58–11–9 (emphasis added). The applicable policy provision in this case mirrors the above statutory language and states in pertinent part:

We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must *arise out of the . . . use* of the "uninsured motor vehicle." (emphasis added).

We interpreted the meaning of "accident" in a similar insurance provision in *State Farm Automobile Insurance Company v. Wertz*, 540 N.W.2d 636, 639 (S.D.1995). Surprisingly, Farm & City did not appeal the trial court's decision that this incident was an "accident" under the policy and we may not consider that issue.

[¶ 9.] This case is one of first impression in South Dakota, as it is our first opportunity to examine uninsured motorist coverage and the common insurance policy language requiring that liability arise out of the ownership, maintenance or use of an uninsured motor vehicle, in the context of a drive-by shooting.

[¶ 10.] The dispute in this appeal concerns the policy language requiring Andrews' liability to "arise out of the ownership, maintenance, or *use* of the uninsured motor vehicle." The parties would have us utilize a three-part test from a Minnesota case to interpret the policy language. *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987). The *Klug* test examines whether: (1) a causal connection exists between the use of the uninsured vehicle and the resulting harm; (2) an act of independent significance broke the causal connection between the use of the vehicle and the harm suffered; and (3) the "use" of the vehicle was normal and proper. *Id.* We note that although Minnesota case law may be persuasive authority, it is not binding on this Court.

[¶ 11.] The *Klug* case involved substantially similar facts to this present case. A co-worker chased another co-worker on a highway, pulled along side, pointed a shotgun out his passenger side window and shot into the driver's side window of the victim's vehicle. *Id.* at 877. The victim sustained injury to his left arm. *Id.* He filed for benefits under his uninsured motorist coverage and the insurer denied coverage. *Id.* The trial court granted summary judgment to the insurer. *Id.*

[¶ 12.] Ultimately, the Minnesota Supreme Court reversed and under its three-part test reasoned: (1) the requisite causal nexus existed because the car was an "ac-

tive accessory" in the shooting, which allowed the assailant to "keep up" with the victim; (2) that no act of independent significance broke the causal nexus because the driving and shooting were "inextricably linked"; and (3) the assailant used his vehicle for "motoring" purposes to place himself in a position to harm the victim. *Klug,* 415 N.W.2d at 878–79.

[¶ 13.] Like several other courts, we find this reasoning unconvincing. *Ruiz v. Farmers Ins. Co.,* 177 Ariz. 101, 865 P.2d 762, 765 (1993) (finding that discharging a firearm from a vehicle is an "independent, voluntary, and deliberate act[ ] of a criminal using an uninsured vehicle not as a car, but as a gun platform"); *State Farm Mut. Auto. Ins. Co. v. Spotten,* 610 N.E.2d 299, 302 (Ind.App.1993) (reasoning that a random act of violence is not a risk reasonably contemplated by the parties to the insurance contract); *Coleman v. Sanford,* 521 So.2d 876, 877 (Miss.1988) (holding the shooting was voluntary and deliberate rendering use of the vehicle incidental); *Ward v. International Indem. Co.,* 897 S.W.2d 627, 628 (Mo.App.1995) (finding that uninsured vehicle must be instrumentality of the injury not mere situs of the injury).

[¶ 14.] While we could accept Minnesota's three-part test for interpreting whether liability arises out of the use of a vehicle, its reasoning in the context of a drive-by shooting does not persuade us. We do not agree with the conclusion in *Klug* that shotgun injuries and the use of an uninsured vehicle are causally connected. Granted, Andrews used the vehicle to position himself to harm Davis, but this ignores his deliberate act of pointing a loaded shotgun out his window and firing it into the passenger window where Davis sat. He was convicted of voluntary manslaughter for his actions, which is comparable to "willful and wanton" misconduct. *State v. Seidschlaw,* 304 N.W.2d 102, 106 (S.D.1981). Andrews' use of his vehicle for transportation purposes did not cause Davis' death. His illegal discharge of a firearm did. We find no causal connection.

[¶ 15.] Although the facts of this case are tragic, we do not believe that driving a vehicle and the illegal discharge of a firearm are "inextricably linked." The better reasoned cases find that such conduct is an act of independent significance. *Ruiz,* 865 P.2d at 765; *Taylor v. Phoenix Ins. Co.,* 622 So.2d 506, 509 (Fla.Dist.App.1993) (drive-by shooting was an act "unrelated to use of a motor vehicle"); *Kessler v. Amica Mut. Ins. Co.,* 573 So.2d 476, 479 (La.1991) ("A common-sense analysis reveals that . . . '[t]he conduct of the motorist in shooting a gun toward the plaintiff was the legal cause of plaintiff's injuries, but [the conduct] was not a use of the vehicle' "); *Coleman,* 521 So.2d at 877. These cases all involve similar fact patterns. One motorist pursues another, shoots into the other vehicle and a victim makes a claim for uninsured motorist benefits under an insurance policy. A majority of courts refuse to find that the insurer and insured contemplated that the conduct involved in a drive-by shooting would be covered under the policy. *Kessler,* 573 So.2d at 479 (reasoning that finding coverage existed would extend the meaning of the arising out of language by replacing the word "use" with the phrase "while using"); *Bisgard v. Johnson,* 3 Neb.App. 198, 525 N.W.2d 225, 231 (1994) (holding that liability insurance policy providing coverage for automobile accident only provides coverage for injuries caused by an accident involving the insured automobile); *Auto Owners Ins. Co. v. Rucker,* 188 Mich.App. 125, 469 N.W.2d 1, 2 (1991) (finding that uninsured motorist coverage does not apply unless the injury is foreseeably identifiable with the use of the vehicle). We agree with the majority.

[¶ 16.] Furthermore, we do not believe Andrews made a "normal" use of his vehicle for transportation purposes. The facts indicate that Andrews was using his vehicle to stalk LeDeux, with whom he had fought earlier, in order to assault LeDeux with a deadly weapon. This is not a normal use of a vehicle. Normal use consists of utilizing a vehicle for transportation to and from destinations. Using a vehicle to stalk another person with the intent of inflicting injury is in no way a "normal" use as that term is contemplated under SDCL 58–11–9 and the insurance policy language complying with that statute.

[¶ 17.] Affirmed.

[¶ 18.] SABERS, AMUNDSON, KONENKAMP and, GILBERTSON, Justices, concur.