2002 SD 7

**DAKOTA, MINNESOTA & EASTERN
RAILROAD CORPORATION,
Plaintiff and Appellant,**

v.

**HERITAGE MUTUAL INSURANCE
COMPANY, d/b/a Heritage Insur-
ance, Defendant and Appellee.**

No. 21903.

Supreme Court of South Dakota.

Argued Oct. 1, 2001.

Decided Jan. 16, 2002.

Brian J. Donahoe and Michael D. Bornitz of Cutler, Donahoe & Mickelson, Sioux Falls, for plaintiff and appellant.

Gary Thimsen and Jennifer Wollman of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee.

ERICKSON, Circuit Judge.

[¶ 1.] The Dakota, Minnesota and Eastern Railroad Company (DM&E) appeals from the judgment granting the cross-motion for summary judgment filed by Heritage Mutual Insurance Company (Heritage Insurance). We affirm.

## FACTS

[¶ 2.] DM&E operates an interstate common carrier railroad within the State of South Dakota. Heritage Insurance is an insurance company doing business in South Dakota. At all times pertinent to this action, Heritage Insurance had a policy covering DM&E for damages because of bodily injury or property damage, and a corresponding duty to defend DM&E from claims. Julian Olson (Olson) was an employee of the DM&E. While acting in the course of his employment he was severely injured in a motor vehicle accident.

[¶ 3.] DM&E has two insurance policies in force with the intent to cover this type of situation. The first, with Heritage Insurance, is a business automobile insurance policy, with policy limits of $1,000,000. The second, with CNA Insurance, is a railroad liability insurance policy, with a retained limit of $1,000,000. In obtaining these policies, DM&E tried to coordinate them to provide a total coverage package.

[¶ 4.] The railroad liability insurance policy contained the following endorsement:

In consideration of the premium charged, it is understood and agreed that Section I, Exclusion I, does not apply to any **Bodily Injury or Property Damage** which arises out of or results from the ownership, maintenance, operation, use, loading or unloading of any

Auto but only to the extent that such coverage is available to the Insured in the underlying insurance as scheduled below.

With respect to coverage provided by this endorsement, the Company's liability for **Each Incident** shall apply in excess of a retained limit of $1,000,000 each incident. If the retained limit is not satisfied in full by the underlying insurance, the **Retained Limit** as specified on the Declarations, shall apply for the remainder up to the $1,000,000 each incident.

[¶ 5.] The Heritage Insurance policy is then noted as being the underlying insurance carrier.

[¶ 6.] In other words, the railroad liability insurance policy is an excess coverage policy and DM&E is responsible for the first $1,000,000 of liability. To that end they purchased the Heritage policy in an attempt to cover that first $1,000,000 of potential liability.[1]

[¶ 7.] As a railroad worker, Olson was not subject to workers' compensation insurance and filed suit against DM&E under the Federal Employer's Liability Act (FELA) 45 U.S.C. § 51 et seq. DM&E requested that Heritage defend the case, but it refused. Heritage also refused to contribute towards an eventual settlement. That refusal was based upon the following policy exclusions:

**B. Exclusions**

This insurance does not apply to any of the following

. . .

3. Workers' Compensation

Any obligation for which the *insured* or *insured's* insurer may be

---

1. This case is submitted on limited stipulated facts. As a result it is unknown whether Heritage was aware DM&E's intent at the time the business automobile insurance policy was negotiated.

held liable under any worker's compensation law, disability benefits law or unemployment compensation law or any similar law.

4. Employee Indemnification and Employer's Liability

*Bodily injury to:*

a. An employee of the *insured* arising out of and in the course of employment by the *insured;* or

. . .

This exclusion applies:

1. Whether the *insured* may be liable as an employer or in any other capacity;

And

2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to *bodily injury* to domestic employees not entitled to worker's compensation benefits or to liability assumed by the *insured* under an insured contract.

[¶ 8.] The trial court ruled that Clause B–3 (workers' compensation or similar law) did not apply to the FELA; therefore, the workers' compensation exclusion did not exclude coverage. The Court also held that under Clause B–4 (Employee Indemnification and Employer's Liability Exclusion) the DM&E was not provided coverage and coverage was excluded. The court further ruled that the "South Dakota legislature enacted a statutory exception which permits an automobile insurance policy to exclude liability coverage to employees while operating within the scope of their employment," so Clause B–4 did not violate public policy of this state.

## ANALYSIS

[¶ 9.] The parties agree that no genuine issues of material fact exist and that the issues presented are solely questions of law as to the interpretation of an insurance policy's exclusionary provisions.

### Summary Judgment

[¶ 10.] As has often been said:

"Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.' "

*Truck Ins. Exch. v. CNA*, 2001 SD 46, ¶ 23, 624 N.W.2d 705, 710.

### Standard of Review

[¶ 11.] In *Farm and City Ins. v. Estate of Davis*, 2001 SD 71, ¶ 6, 629 N.W.2d 586, 587 this Court reaffirmed that it would:

interpret provisions in an insurance policy which are "fairly susceptible" to different interpretations by choosing that interpretation most favorable to the insured. (citations omitted). We will not, however, "seek out a strained or unusual meaning for the benefit of the insured." (citations omitted). We read and understand insurance contracts "according to the natural and obvious import of the

language, without resorting to subtle and forced construction or the purpose of either limiting or extending their operation." (citations omitted). When it is necessary to review an insurance policy in light of a certain statute, we treat that statute "as if it were actually written into the policy."

■ [¶ 12.] Additionally, we review the construction of a contract under the de novo standard as a question of law. *Mahan v. Avera St. Lukes,* 2001 SD 9, ¶ 15, 621 N.W.2d 150, 153.

## ISSUE ONE

[¶ 13.] **Whether the phrase "any similar law" in a business automobile insurance policy's exclusionary provision which excludes coverage for "any workers' compensation law, disability benefits law or unemployment compensation law or *any similar law*" is sufficiently unambiguous to exclude an insured's employee from coverage under an action brought pursuant to the FELA.**

■ [¶ 14.] This issue was brought before the trial court by Heritage Insurance. The court specifically found that policy exclusions are to be strictly construed. In doing so, it concluded that the phrase "any similar law" found in exclusion B–3 did not encompass the FELA. Thus, DM&E won on this issue. DM&E filed a notice of appeal on April 10, 2001. Heritage Insurance did not file a notice of review on any issue in this case. Therefore, Heritage Insurance is precluded from asking this Court to reverse on this issue because of its failure to file a notice of review. *Himrich v. Carpenter,* 1997 SD 116, ¶ 3, 569 N.W.2d 568, 570.

[¶ 15.] DM&E raised the issue in its original brief. Heritage has merely responded. Since it is not properly before

the Court, we need not decide this issue at this time.

## ISSUE TWO

[¶ 16.] **Whether the phrase "domestic employees" in an exception to an exclusionary clause of a business automobile insurance policy means "of one's own country," or "household servant."**

■ [¶ 17.] DM&E argues that Clause B–4 is ambiguous because the clause is fairly susceptible to two constructions. Clause B–4 excludes coverage for bodily injury to a DM&E employee arising out of and in the course of employment. However, this exclusion does not apply to "domestic employees not entitled to workers' compensation benefits[.]" DM&E argues that the phrase "domestic employees" is susceptible to two constructions. DM&E admits the first definition is well known and means "a worker employed in and around the household." DM&E's second definition, which it argues is controlling, is "of one's own country."

[¶ 18.] Heritage Insurance argues that the phrase is not ambiguous and is subject to its plain and ordinary meaning. Heritage argues that DM&E's construction is strained, illogical and unreasonable.

[¶ 19.] The trial court ruled that a "domestic employee" is one engaged in household work. It further ruled that it would be a strained interpretation to find that it meant being "of this country."

[¶ 20.] In *Jackson v. Lee's Travelers Lodge, Inc.,* 1997 SD 63, ¶ 18–19, 563 N.W.2d 858, 862 this Court interpreted the term "domestic employee" in light of our workers' compensation statutes. Citing an Arizona Court of Appeals case, *Griebel v. Industrial Com'n of Arizona,* 133 Ariz. 270, 650 P.2d 1252, 1255 (Ariz.Ct.App. 1982), this Court found its rationale to be sound and applied its "profit test" to deter-

mine whether an injured worker was excluded from coverage as a domestic servant. That "profit test" was defined as follows:

> We believe the rule to be that if the master is regularly using his servant's labor in a commercial enterprise, that is, attempting to profit in an entrepreneurial capability from the labor of the servant, then the master is an "employer" within the [workers' compensation statute's] definition ... notwithstanding the place where the servant works or the nature of his duties. On the other hand, if the master is the sole consumer of the servant's labor, and that labor is directed to the construction, maintenance or repair of the master's private properties or care of the master's family, and that labor is not within the usual trade, business, profession or occupation of the matter, then the servant is a "domestic servant" under the [statute]. *Ibid*, ¶ 19.

[¶ 21.] Therefore, we reject DM&E's argument holding that the term "domestic servant" means a person whose "labor is directed to the construction, maintenance or repair of the master's private properties or care of the master's family." *Id.*

## ISSUE THREE

[¶ 22.] **Whether SDCL 32–35–73 authorizes an exclusionary provision in a business automobile insurance policy which excludes liability coverage to employees while operating within the scope of their employment in situations where an employee is not covered under the workers' compensation law.**

[¶ 23.] DM&E argues that Clause 4–B is void because it is contrary to public policy reflected in South Dakota's Financial Responsibility Law. It argues that this public policy is so strong that there are only two exceptions provided in South Dakota law. The first is when liability is actually covered under any workers' compensation law. The second is when liability should be covered by workers' compensation law but may not actually have been covered.

[¶ 24.] Heritage argues that SDCL 32–35 contains certain exclusions when insurance is not required. SDCL 32–35–73 contains an employee exclusion section, which allows coverage to be excluded for "any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic of the insured ...." This language is nearly identical to the policy exclusion.

[¶ 25.] The trial court ruled that since public policy is found in our statutes, the provision of SDCL 32–35–73 is the statutory exception that permits an automobile insurance company to exclude coverage to employees while operating a business vehicle within the scope of their employment.

[¶ 26.] SDCL 32–35–73 [workers' compensation coverage unnecessary] provides:

> A *motor vehicle liability policy* as defined in § 32–35–68 need not insure any liability under any workers' compensation law *nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment*, other than domestic, *of the insured*, or while engaged in the operating, maintenance, or repair of any such vehicle nor any liability for damage to property owned by, rented to, in charge of, or transported by the insured. (emphasis provided).

[¶ 27.] "SDCL 1–1–23 states that the sovereign power of this state, otherwise known as its public policy, is expressed in part by 'statutes enacted by the legislature[.]'" *Breck v. Janklow*, 2001 SD 28, ¶ 30, 623 N.W.2d 449, 459.

[¶ 28.] Generally, issuers of automobile liability insurance must provide coverage to permissive drivers of vehicles. SDCL 32–35–70. Certain exclusions may apply. At one time, "household exclusions" were declared invalid as a violation of public policy. *Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881, 884 (S.D.1992). Immediately thereafter, the legislature amended SDCL 32–35–70 to provide an exclusion, which was later determined to be new public policy. *DeSmet Ins. Co. of South Dakota v. Gibson*, 1996 SD 102, ¶ 7, 552 N.W.2d 98.

[¶ 29.] DM&E analogizes this situation to *Cimarron, supra*. However, unlike the circumstances in *Cimarron*, there is a statute in place, which if interpreted as proposed by Heritage, defines public policy.

[¶ 30.] Important to our decision is the language in *Tapio v. Grinnell Mut. Reinsurance Co.*, 2000 SD 147, ¶ 10, 619 N.W.2d 522, 525 where this Court stated:

> When it enacted SDCL 58–11–9.3 [2], *the legislature explicitly provided that exclusions, such as the one used here, are permissible.* This legislative mandate will be given priority over other, more general provisions. In certain situations, the owner of a vehicle may not be able to secure affordable coverage unless an unacceptable driver is excluded. In those situation, it is "in the best interests of the parties and the public to require the insurer to continue liability coverage on the express condition that the named insured agree that the insurer will not be liable for any claims based on conduct of the unacceptable driver."

(citations omitted). *When it enacted SDCL 58–11–9.3 the legislature created this limited exception in furtherance of those policy concerns. We are bound by its determination.* (emphasis provided).

[¶ 31.] While not dealing with SDCL 32–35–73, *Tapio* deals with an analogous situation. This is a motor vehicle liability policy excluding liability coverage for any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment. Olson was certainly an employee of the insured and was engaged in the insured's employment at the time of the accident.

[¶ 32.] Thus, the employee exclusion does not violate South Dakota public policy. SDCL 32–35–73 permits an automobile insurance company to exclude coverage to employees while operating a business vehicle within the scope of their employment.

### ISSUE FOUR

[¶ 33.] **Whether the trial court erred in granting Heritage Insurance's cross motion for summary judgment because there exists a genuine issue of material fact as to whether DM&E had a reasonable expectation of coverage.**

[¶ 34.] DM&E argues that there is a genuine issue of material fact based upon the application of the doctrine of reasonable expectations. DM&E presented an affidavit from the assistant treasurer and comptroller supporting its argument that at the time it purchased its policy from

---

2. SDCL 58–11–9.3:

An insurance policy covering a private passenger automobile or other motor vehicle registered or principally garaged in this state may by written agreement with the named insured exclude a named individual from coverage. The policy may also contain a restrictive endorsement reducing the limits of liability or collision coverage when the vehicle is operated by a named person or class of persons. However, if the policy does provide liability coverage to a person or persons named in a restrictive endorsement, the liability coverage may not be less than the minimum prescribed by chapter 32–35.

Heritage, DM&E clearly thought the policy would cover FELA incidents. DM&E argues that it reasonably relied upon the absence of clear language in the policy excluding FELA coverage at the time of purchase.

[¶ 35.] Heritage did not file an answering affidavit. It claims that the issue is being raised for the first time in this forum. Heritage argues that DM&E entered into a stipulation of undisputed material facts before the trial court and cannot change its argument now. DM&E also contends this issue was raised before the trial court both in its trial court brief and in oral argument.

[¶ 36.] Both parties are essentially correct. The issue of reasonable expectations was raised in the context of the argument concerning public policy and the provisions of SDCL 32–25–73. However, it does not appear that DM&E raised it in the context of there being a genuine issue of material fact.

[¶ 37.] To make this argument DM&E relies upon *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 463 (S.D. 1991); *Dairyland Ins. Co. v. Wyant*, 474 N.W.2d 514, 516 (S.D.1991); and *Hawkeye–Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 490 (S.D.1985). Unfortunately, while discussed in each of those cases, "the doctrine of reasonable expectations has never been adopted by South Dakota; in fact, this Court has repeatedly declined to adopt the doctrine," particularly in those cases. *SDCP v. Wausau Underwriters Ins. Co.*, 2000 SD 116, fn.5, 616 N.W.2d 397.

[¶ 38.] DM&E argues that because the terms of the policy are ambiguous, it should be applied to determine the clear meaning of the policy. In *Alverson v. Northwestern Nat'l Cas. Co.*, 1997 SD 9, ¶ 13, 559 N.W.2d 234 this Court, citing *American Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 103 (S.D.1994), said:

> This Court expresses no opinion whether the doctrine of reasonable expectations would govern construction of an insurance contract if the terms of that contract were ambiguous, or may otherwise lead a policyholder to reasonable, but incorrectly, conclude that coverage existed. As in *Wyant* that issue is not before us today because we have held that there is nothing ambiguous about this policy. The clear and plain meaning of the terms of the policy read as a whole exclude coverage.

[¶ 39.] We have determined that there is nothing ambiguous about the policy exclusion in this case, and therefore, the issue is not before us. The doctrine of reasonable expectations simply does not apply to this policy language in these circumstances.

## CONCLUSION

[¶ 40.] Based on the foregoing, we affirm the judgment of the circuit court.

[¶ 41.] GILBERTSON, Chief Justice, and AMUNDSON, Justice, and ROEHR, Circuit Judge, concur.

[¶ 42.] ERICKSON, Circuit Judge, for KONENKAMP, Justice, disqualified.

[¶ 43.] ROEHR, Circuit Judge, for SABERS, Justice, disqualified.

GORS, Acting Justice (concurring in part and dissenting in part).

[¶ 44.] I concur in Issues One, Two and Four and I dissent on Issue Three where we validate the Heritage business automobile insurance policy exclusion of liability coverage for DM&E employees while operating in the scope of their employment. In my experience, when the agent sells insurance, everything is covered. However, when there is a claim, nothing is covered. The legislature requires, as a mat-

ter of public policy, that the people of South Dakota buy automobile liability insurance. SDCL 32–35–113. The legislature should also require, as a matter of public policy, that the liability insurance provides coverage.