1048. TOOLE FURNITURE COMPANY *v.* ELLIS.

1. A petition alleging negligence on the part of an employee, in driving a dray at a dangerous and reckless rate of speed, in driving on the left-hand side of the roadway, in not seeing the petitioner and avoiding a collision, in not stopping the dray and pulling around the petitioner's horse and buggy, and in recklessly running the dray into the petitioner's horse and buggy while the employee was "driving a dray of the defendant company, for which he was employed by the said company," and which alleged consequent injury, set forth a cause of action against such employee's master, and a general demurrer to the petition was properly overruled.

2. The evidence fully authorized the verdict rendered in favor of the plaintiff; and the error of the court, in admitting evidence as to an element of damage not set forth in the petition, was rendered harmless by a correct and explicit instruction of the court as to the measure of damages, whereby the testimony objected to was 'practically excluded from the consideration of the jury.

Complaint, from city court of Macon—Judge Hodges. February 17, 1908.

Argued April 22,—Decided December 8, 1908.

Ellis brought suit against the Toole Furniture Company for $300 damages. He alleged, that as he was driving a spirited horse to his buggy, upon the right side of the roadway, at a slow rate of speed, and using all due care, a one-horse dray approached him at a reckless rate of speed, with the driver whipping the mule; that at the intersection of two streets, where a bright electric light was burning, and the petitioner and his horse and buggy were in the full view of the driver of the dray, the driver pulled the mule, attached to the dray, to the left-hand side, and ran the dray into the buggy, completely destroying the left-hand wheels and otherwise damaging the buggy and seriously injuring the horse; that he called out to the driver and warned him to look out, when

the dray was about 75 feet from him, but that, notwithstanding the warning, the driver continued the reckless rate of speed at which he was already driving, continued to whip his mule, and, crossing diagonally to the left-hand side, ran into petitioner's buggy; that the driver was an employee of the defendant, "then and there driving a dray of the defendant company, for which he was employed by said company." The petitioner alleged, that he was in the exercise of all ordinary care and diligence and could not possibly have prevented the collision, and that the driver was negligent, (a) in driving the dray at a dangerous rate of speed at said time and place; (b) in driving on the left-hand side of the roadway; (c) in not seeing petitioner and avoiding the collision; (d) in not observing the warning of petitioner and stopping the dray or pulling around the horse and buggy; (e) in deliberately and recklessly running the dray into petitioner's horse and buggy.

The defendant's special demurrer to the tenth paragraph of the petition, which set up certain statements alleged to have been made by the servant of the defendant, was sustained and that paragraph of the petition was stricken. The defendant also demurred generally, and preserved, by exceptions filed pendente lite, its exceptions to the order of the trial judge overruling the general demurrer. In its answer the defendant, after denying all the paragraphs of the plaintiff's petition which tended to attach to it any liability, pleaded, in its own defense, that the person mentioned in the petition as its employee exercised ordinary care and diligence, and did all in his power to prevent the mule and dray from running into the buggy, and that, therefore, any damage suffered by the petitioner was the result of an accident. The defendant also pleaded that it was not liable, because the alleged driver, Mell Dykes, was not in the employ of the defendant, nor acting within the scope of the defendant's business, and that the injury, if any occurred, was not done by the command of the defendant, but the driver was acting without the scope of his authority and without the scope of defendant corporation's business, and was exceeding the scope of his authority, thereby making himself individually liable, without imposing liability upon the defendant.

The jury rendered a verdict in favor of the plaintiff, for $154.58. The defendant's motion for new trial was overruled, and exception is taken to this judgment.

*Glawson & Fowler,* for plaintiff in error.

*M. Felton Hatcher, Roland Ellis,* contra.

RUSSELL, J. (After stating the foregoing facts.)

1. We think the court correctly overruled the general demurrer and properly refused to dismiss the petition. Counsel for the plaintiff in error contends that no cause of action was set forth, because the suit is predicated upon the wilful and wanton trespass and criminal negligence upon the part of the drayman. Counsel insists that the petition should be construed as setting forth a cause of action based upon a wilful trespass, and that the declaration is in violation of §3031 of the Civil Code, in that it is nowhere alleged that the defendant corporation commanded the driver to demolish the petitioner's buggy, or assented to it. Granting that the pleadings are to be construed most strictly against the pleader, we fail to see the point of plaintiff in error's contention. We think the petition clearly sets forth a cause of action arising upon the negligence of the drayman while in the conduct of the business for which he was employed by his master, the defendant corporation. It is true, it is alleged in the petition, that the "drayman was driving at a grossly reckless speed and continued to whip the mule attached to the dray; that a bright electric light was burning and that petitioner and his horse and buggy were in full view of the driver, and that petitioner called out to the driver to look out, and that, notwithstanding said warning and said reckless rate of speed, . . said driver continued to whip said mule, and pulled said mule and crossed over to the left-hand side, running said dray into the buggy of petitioner." And it is also true that in the statement of the result, the language used is that "said collision was entirely due to the negligence of said driver." To our minds, however, there is nothing in any of these allegations which tends to show that the petitioner intended to charge that the act which resulted in his damage was intentionally done for the purpose of damaging the plaintiff or his property. While one of the allegations of negligence relied upon by the plaintiff consisted in the drayman's *"deliberately* and recklessly running the dray into petitioner's horse," etc., and while the word "deliberately" might have been eliminated by special demurrer, construing the petition as a whole, the mere use of the word "deliberately," especially when it appears in conjunction with the word "recklessly," is not suffi-

18

cient, even under the strictest rule of construction, to transform the action from a suit dependent upon the negligence of an employee into a wilful and intentional trespass, or even to render doubtful the nature of the cause the defendant was called upon to defend. Even though the verbiage of a petition, in cases of doubt, is to be construed strongly against the pleader, the language employed must be given a rational interpretation; and, when the word "deliberately," is considered with all of the other statements of the petition, its inappropriateness to convey any meaning is so apparent that it can be disregarded as mere surplusage. Plaintiff in error insists that as, by the provisions of §3031 of the Civil Code, "the principal is not liable for the wilful trespass of his agent unless done by his command or assented to by him," and inasmuch as there is no allegation that the defendant either commanded the injury or assented to it, the petition should have been dismissed.

We think the case was properly brought, under the provisions of §3817 of the Civil Code. "Every person shall be liable for torts committed by his wife, and for torts committed by his child or servant by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." It is useless at this time to discuss the ruling in *Lockett* v. *Pitlman,* 72 *Ga.* 817, in which Judge Hall, construing the word "servant," as used in this section, restricted it to domestic servants, or to the fact that this court in *Patterson* v. *Sams,* 2 *Ga. App.* 755 (59 S. E. 18), referred to the decision in the *Lockett* case. In neither of these cases did the decision depend upon the restricted construction placed upon the word "servant" by Judge Hall. In the *Patterson* case this court held that the lower court did right in overruling the demurrers; and the ruling in the *Lockett* case was merely adverted to in passing, as much because of its peculiarity as anything else. Personally, we do not concur in the view that the word "servant," as employed in §3817, is restricted to mere domestic servants; for a corporation, under this definition, might not have a single servant. A domestic servant, according to Webster's International Dictionary, as well as Bouvier's Law Dictionary, is "a house servant; a household assistant; one who lives in the family of another." The term does not extend to workmen and laborers outdoors. Wakefield v. State, 45 Texas, 558. While *Lockett* v. *Pittman,* supra, as the older adjudication, is controlling,

and it has not been expressly reviewed or overruled, still it is evident from the decisions in *Central Ry. Co.* v. *Brown,* 113 *Ga.* 414 (38 S. E. 989, 84 Am. St. R. 250), *Southern Ry. Co.* v. *James,* 118 *Ga.* 340 (45 S. E. 303, 63 L. R. A. 257), and *Savannah Electric Co.* v. *Wheeler,* 128 *Ga.* 552 (58 S. E. 38, 10 L. R. A. (N. S.) 1196), as well as in other cases which could be cited, that the dictum in the *Lockett* case has been sidetracked.

We had in mind that what was said in that case was perhaps not controlling, and that the court, after pointing out that the proceeding in that case was highly penal in its nature, finally concluded its opinion in the *Lockett* case by saying: "perhaps a recovery for the actual damages proved in the case might have been sustained upon the evidence disclosed." To our minds, if any recovery against the defendant, restricted to the actual damages, no matter how small, growing out of the tortious act of his overseer or working boss, could have been sustained, then the word "servant" could not be confined merely to domestic servants; and for that reason, in holding in the *Patterson* case, supra, that the court did not err in overruling the demurrer, we did not rule that it was necessary that it appear that the servant was a domestic servant, but used the following language (p. 756): "*Even* if in an action brought in the superior court it *were* necessary to allege special facts showing the servant to be a domestic servant," etc., this is not necessary, for section 3817 of the code gives the right of action for torts committed, "whether the same be voluntary or by negligence." And it must be remembered that in *W. & A. Railroad* v. *Turner,* 72 *Ga.* 292 (53 Am. R. 842), which antedated the decision in the *Lockett* case, supra, and in which the decision was rendered by a full bench, it was expressly held that §§ 2203 and 2961 of the then code (which are now §§ 3031 and 3817) must be construed so as to harmonize both, and allow both to remain of force in the cases to which they apply. In the *Turner* case a judgment of $700 for a wilful trespass by a conductor while in the prosecution of his duties was sustained. The present case can well be distinguished from the *Lockett* case, even if that decision was authority as to torts voluntarily committed, because the plaintiff in the present case relies solely upon negligence as the cause of his injury. Even if this distinction does not exist and the plaintiff has no right of action under § 3817, as the word "servant"

is construed in the *Lockett* case, still the action could be main-
tained at common law, and, under the ruling in the *Brown* and
*Wheeler* cases, supra, the allegations of the petition, as summarized
in the first headnote, were sufficient to set forth a cause of action
at common law, arising from the negligence of the defendant's
servant while engaged in the prosecution of the master's business
within the scope of his duty, and there was no error in overruling
the general demurrer.

2. In the motion for new trial it is insisted that the verdict
is contrary to evidence and that the court erred in allowing the
plaintiff to prove, as an element of damage, that he lost the serv-
ices of his horse, of the daily value of $5, for a period of thirty
days, by reason of the injury inflicted by the defendant's servant.
There was really no serious issue as to the damages done to the
buggy, and there was evidence for the plaintiff which would have
authorized the jury to find, on account of the injury to the buggy
alone, a larger verdict than that which was rendered. There was
also evidence of the depreciation of the value of the horse because
of the injury received. So far from saying, therefore, that the
verdict was contrary to the evidence, the record seems to justify
the statement that the amount of the verdict was fully authorized
by the evidence. It is insisted, however, that the fact that the
plaintiff was permitted to testify that he was damaged, by reason
of the loss of the services of his horse, $5 a day for thirty days so
injuriously affected the defendant that for that reason a new trial
should have been granted. We think the court erred in not sus-
taining the objection, offered by defendant's counsel, to this evi-
dence; but we do not think that it has been shown that this error
harmed the defendant. The evidence should have been repelled,
because there is no allegation in the petition that the plaintiff was
damaged by loss of hire, but, on the contrary, it is alleged that the
petitioner has been damaged in the sum of $100 in consequence of
permanent lameness. The statement in the petition that the horse
was rendered severely lame, and was unfitted for work for a period
of thirty days, is merely set out by way of inducement. If it be
conceded that the court erred in admitting the testimony, however,
all the harmful effect of the error was removed by the instruc-
tion of the court upon the subject of the measure of damages, in
which the jury were told that if they should find for the plaintiff,

he would only be entitled to recover the difference between the market value of the buggy and horse before they were injured and the market value after the injury. By this clear and succinct statement, the trial judge removed from the consideration of the jury any damages which might have resulted to the plaintiff from the loss of the service of his horse.          *Judgment affirmed.*