**192**

547 P.2d 44

**Arthur W. STEPHENS, Jr., Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Gene O'Connor, Respondent Employer.**

**No. 1 CA–IC 1355.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 25, 1976.

Thomas, Udall & Anderson by Lloyd D. Anderson, Flagstaff, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, by Thomas E. Dugal, Phoenix, for respondent.

OPINION

NELSON, Presiding Judge.

On September 21, 1973, Arthur W. Stephens, Jr. (Stephens), the petitioner herein, sustained injuries to his back and spinal cord when a scaffolding on which he and another worker were standing, collapsed. Stephens was a carpenter, working at that time on the construction of a pre-fab house for respondent Gene O'Connor (O'Connor). Thereafter petitioner filed the workmen's compensation claim which is the subject of this appeal. After a hearing on the matter the Industrial Commission (Commission) issued an award denying the petitioner's claim for benefits.

On appeal the crucial question presented is whether respondent O'Connor was an employer subject to the Workmen's Compensation Act. At the Commission level the hearing officer found and affirmed on review that O'Connor was not such an employer; that he was not engaged in a "trade, business, profession or occupation", A.R.S. § 23–902A, so as to subject him to the provisions of the Arizona Workmen's Compensation Act, A.R.S. § 23–901 et seq. We agree with this conclusion and therefore affirm the award.

The parties are in substantial agreement as to the facts of this case. At the time of Stephens' accident, O'Connor was employed as a real estate salesman for the Village of Oak Creek, a real estate development. He had purchased two lots in this development, on one of which he was having constructed a pre-fab house to be used as his personal residence. O'Connor hired numerous workers and contractors, including Stephens, to erect this house. O'Connor provided all necessary materials for petitioner, however petitioner provided his own tools and was paid on an hourly basis.

The particular facts which Stephens points to as supportive of his position that O'Connor was in the business of constructing houses and not simply acting as a pri-

vate homeowner, involve the manner in which he was hired and method of payment of the employees, as well as the discussions and eventual construction of other houses.

Stephens was hired by O'Connor at O'Connor's office. There he observed several sets of blueprints or construction permits for different models of houses. Petitioner and O'Connor agreed on a particular wage but then agreed to a lesser amount if no taxes were to be withheld. O'Connor testified that he said to Stephens: "However, if—since this is not a tax deductible type of situation for me, it's my own home, I won't be involved with any tax measures whatsoever. So, if I do not provide insurance or make any exemptions out of your wages, I can give you the benefit by paying you a dollar an hour less." Workers and costs of construction were paid from a separate construction account.

Stephens testified that O'Connor told him that when the work was finished on this particular house, there would be more work for petitioner to do on other houses. O'Connor testified that his original intent was to buy a second pre-fab house which he would then have built for speculative purposes, but that these plans fell through when financing could not be obtained. Subsequently O'Connor built a house for a friend of his and also built one other house on a contract basis.

Stephens argues that the totality of this evidence compels a conclusion that at the time of petitioner's accident, O'Connor was engaged in his "usual trade, business, profession or occupation" of construction.

With respect to the relevance of not withholding taxes, respondent Industrial Commission points out that private homeowners are in fact subject to state and federal tax laws, and may be required to withhold taxes from employees. This fact, however, goes only to the relationship between the employer and employee and has no bearing on the issue here—whether Stephens was employed in O'Connor's regular business.

The Industrial Commission contends that nothing can be inferred from the mere fact that workers were paid from a construction account. We agree that a presumption of business activity based on nothing more than the name and existence of a checking account cannot be made. Support for this position can be found in O'Connor's testimony that the account was personal in nature and was, in fact, used to pay other personal expenses, and was established as a convenience in order to enable his secretary to pay bills which came to his office.

In regard to O'Connor's plans to build more houses in the future, and the subsequent realization of those plans, the Industrial Commission contends that the only relevant evidence was that existing prior to and at the time of Stephens' injury. See *Cooper v. Industrial Commission,* 74 Ariz. 351, 249 P.2d 142 (1952). In September 1973, the evidence shows that O'Connor was building his own private residence, and was neither engaged in nor under contract to perform any other construction work. The hearing officer commented on this question in his finding No. 2, stating:

"2. That although there was conflicting testimony that O'Connor intended or contemplated building other 'pre-fab' homes, it is actual employment which would be controlling rather than the degree of *expectation* of receiving employment. (Citation omitted)"

The decision relied on by the hearing officer in his award and respondent Industrial Commission in its brief is *Lewis v. The Industrial Commission of Arizona,* 93 Ariz. 324, 380 P.2d 782 (1963). Stephens urges that *Lewis* is distinguishable on its facts. We do not agree. The Commission's view that the analysis prescribed in *Lewis* controls this case is correct.

In *Lewis,* a widow arranged with her neighbor to supervise the remodeling of her home. The claimant in that case worked continuously for about three months on the job. The Court held that

even if the employee was injured while regularly—as opposed to casually—employed, only half the test was met. The second component of the test required a determination of whether the employer was engaged in his usual trade, business, profession or occupation. It was noted that the widow's sole source of income was the proceeds from the sale of the farm which she and her deceased husband had owned. On the basis of the facts, the Court concluded that Mrs. Lewis was not an employer within the meaning of the Workmen's Compensation Act. Mrs. Lewis was not engaged in the general business of constructing or remodeling houses; in fact, she had no trade or business whatsoever.

Stephens urges that while the facts in Lewis showed that the widow was not engaged in the business of remodeling, the facts in the instant case show that O'Connor was engaged in the business of constructing houses, and did not fall within the category of householders who hire persons directly for private use. The hearing officer did not so find and the evidence supports his conclusion. *Micucci v. The Industrial Commission of Arizona,* 108 Ariz. 194, 494 P.2d 1324 (1972).

The case of *Cooper v. Industrial Commission,* supra, is also apposite to the determination of whether O'Connor was engaged in the general business of constructing houses only, or was hiring persons to perform private or personal services, i. e., the building of his own residence. While the alleged employer in the *Cooper* case was engaged in extensive farming operations, the injury in question was deemed to have arisen out of work done on his personal residence. The Workmen's Compensation Act was held not to apply.

There is substantial evidence to support the hearing officer's finding that O'Connor was not an employer within the meaning of the Arizona Workmen's Compensation Act. It is not our role to weigh the evidence; we must consider it in a light most favorable to sustaining the award. *Malinski v. The Industrial Commission of Arizona,* 103 Ariz. 213, 439 P.2d 485 (1968).

*Lewis* has language instructive on the policy considerations which must guide our decision here. Starting with the initial proposition that "its [workmen's compensation] purpose is to place the burden of injury from industrial causes upon industry" (citations omitted), 93 Ariz. at 327, 380 P. 2d at 783, the Court went on to quote the following from Larson, *Workmen's Compensation Law:*

"'It has always been assumed, rightly or wrongly, that the cost of compensation protection did not become a burden upon the employer directly, since he was expected to pass the cost along to the consumer in the price of the product. There are those who argue that this does not go to the essence of the compensation idea, and perhaps does not really work out at all; but the fact remains that for decades the compensation principle has been made acceptable to employers (and, to some extent, also to skeptical courts) on the argument that the cost could be passed along through the medium of insurance whose premiums are reflected in the cost accounts on which the price is based.' Larson, supra at 744." 93 Ariz. at 327, 380 P.2d at 784.

And again:

"'It appears then, that whatever the statutory background, the courts will not ordinarily find in the compensation act coverage of work undertaken by a person as, so to speak, a consumer instead of a producer.' Larson, supra at 740." 93 Ariz. at 327, 380 P.2d at 784.

With these policy considerations in mind, we believe it would have been an unjust burden upon O'Connor to require him to have workmen's compensation coverage on persons engaged in the construction of his personal residence. By this act O'Connor was not engaged in producing or selling goods or services which should bear the cost of compensation insurance.

Award affirmed.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concurring.