650 P.2d 1252

**Walter H. GRIEBEL, Deceased, Eleanor E. Griebel, Widow, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Kathleen Rector (Dayton), Respondent Employer,**

**No Insurance, Respondent Carrier.**

**No. 1 CA–IC 2674.**

Court of Appeals of Arizona, Division 1, Department C.

June 22, 1982.

Rehearing Denied July 26, 1982.

Review Denied Sept. 16, 1982.

Davis & Eppstein, P. C. by David C. Bartlett, Tucson, for petitioner.

James A. Overholt, Acting Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Tucson, for respondent employer.

## OPINION

EUBANK, Presiding Judge.

Petitioner Eleanor Griebel filed a claim for widow's benefits alleging that the death of her husband on March 6, 1980, was compensable under the Arizona Workmen's Compensation Act. Because no insurance carrier was involved, the Industrial Commission undertook the initial evaluation of petitioner's claim. An award was issued denying compensability. This award was protested, and formal hearings were held. On May 29, 1981, an award was issued denying compensation on the grounds that Mr. Griebel's employer was not covered by the compensation act. Alternatively, the administrative law judge found that Mrs. Griebel's claim was foreclosed because she had settled a claim for third party liability without approval of the Industrial Commission.

The record shows that Mr. Griebel was employed as a groundskeeper and handyman for the Morning Star ranch of Mr. and Mrs. Rector. After Mr. Rector's death, Mr. Griebel continued his duties at Morning Star, although Mrs. Rector had moved into a townhouse in the city. Mr. Griebel assisted Mrs. Rector with the moving, and also assisted Mrs. Rector's daughter when she moved to Phoenix. Since Mr. Griebel was such a fine groundskeeper and handyman, Mrs. Rector allowed him free reign in his upkeep of the Morning Star ranch, and occasionally requested his services at the other properties owned by the Rector family.

After Mr. Rector's death, Mrs. Rector had become engaged to Mr. Dayton, who is now her husband. Mr. Dayton was renovating an old ranch on a leased mining claim, and requested Mr. Griebel's assistance on an electrical problem. Mr. Griebel agreed to help, but on the third day of this project, he was killed in an automobile accident in transit from the Morning Star ranch. It is unclear whether Mr. Griebel's destination was the mining claim or Mrs. Rector's townhouse, but in any event, there is no question that Mr. Griebel was killed within the course and scope of his employment for Mrs. Rector. The only question for our consideration is whether Mrs. Rector was an "employer" of Mr. Griebel within the meaning and coverage of the Workmen's Compensation Act, A.R.S. § 23–902(A).

The administrative law judge correctly concluded that it was petitioner's burden to show the "employer" status of Mrs. Rector under A.R.S. § 23–902(A). *See Lewis v. Industrial Commission,* 93 Ariz. 324, 326, 380 P.2d 782, 783 (1963). A.R.S. § 23–902(A)[1] reads as follows:

A. Employers subject to the provisions of this chapter are the state, each county, city, town, municipal corporation, school district and *every person who has in his employ any workmen or operatives regularly employed in the same business or establishment under contract of hire, except domestic servants.* Exempted employers of domestic servants may come under the provisions of this chapter by complying with its provisions and the rules and regulations of the commission. For the purposes of this section "regularly employed" includes all employments,

[1] The legislative history indicates that this section was adopted from Utah. We note that Utah recently removed "domestic servant" as an exemption and substituted a basis of hours worked and wages paid the employee. U.C.A. § 35–1–42 (Supp.1981).

whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer. (Emphasis added).

Based on the requirements of this statute, the administrative law judge made two findings of fact. First, that Mrs. Rector was not engaged in *any* trade, business, profession or occupation. Second, that Mr. Griebel was a "domestic servant." The sufficiency of either finding precludes petitioner's recovery of a widow's benefit.

Petitioner takes exception to both of these findings. She contends that her husband was not a "domestic servant" such as a maid or housekeeper. Furthermore, she contends that Mrs. Rector and Mr. Dayton were in the "business" of holding properties for their appreciating values. Because we believe that these issues are intertwined both in fact and in law, we shall address them conjunctively.

Although a term of common usage, "domestic servant" has been subject to varying and inconsistent definitions. Some authorities have attempted to define it by virtue of the employee's residence; that is, whether the employee lives within or without the master's residence. See *Toole Furniture Co. v. Ellis,* 5 Ga.App. 271, 274, 63 S.E. 55, 57 (1908) (negligence action involving the master-servant relationship; citing Bouvier's Law Dictionary); Black's Law Dictionary (Rev. 4th ed. 1968). Of this concept, the Minnesota supreme court stated:

> This distinction dates back to Blackstone and other ancient authorities on the common law of England. It was said that a domestic servant must live "*intra moenia*" or "within the walls." It had its origin in feudal conditions which no longer exist, and which never have existed in Minnesota.

*Anderson v. Ueland,* 197 Minn. 518, 520, 267 N.W. 517, 518 (1936). Certainly, the same thing can be said about Arizona. *Cf. Johnson v. Industrial Commission,* 5 Ariz.App. 185, 424 P.2d 833 (1967).

Similarly, contentions have been raised that "domestic servant" should be defined

according to the nature of the work done. Such is the case of *Barres v. Watterson Hotel Co.,* 196 Ky. 100, 244 S.W. 308 (1922), wherein a hotel maid filed a claim for workmen's compensation and the hotel defended on the grounds that a maid was a "domestic servant." The court stated:

> She was, to be sure, engaged in an employment or occupation similar in many of its aspects to that generally pursued by domestics in the home. We apprehend, however, that the business of running a hotel is industrial in its nature and not domestic in the general meaning of that word.

*Id.* at 101–02, 244 S.W. at 309. *See also, Fitzpatrick v. Crestfield Farm Inc.,* 582 S.W.2d 44 (Ky.App.1978).

These cases, we believe, show the fallacy of drawing distinctions based on antiquated definitions of domestic service. We agree that a "domestic servant" must be employed in or about the home or residence (although not necessarily within the walls), performing domestic tasks such as handymen, yardmen, gardeners, maids and so forth. *See Torres v. Industrial Commission,* 10 Ariz.App. 210, 457 P.2d 750 (1969); *Johnson v. Industrial Commission, supra.* For workmen's compensation purposes, however, we believe the most important inquiry is the use to which the master puts his servant's labor. As stated in *Jack v. Belin's Estate,* 149 Pa.Super. 531, 534, 27 A.2d 455, 457 (1942):

> Agricultural workers are those who are engaged in an enterprise conducted by the employer for his profit. House servants merely contribute to the personal needs and comfort of the employer. Between the two groups are the outservants, who in strictness do not fall within either class. And yet there is much better reason for excluding gardeners, caretakers and the like, than agricultural workers, for they are not engaged in commercial enterprise and their services all relate to the home life. Our conclusion, in construing the act, is that the place where the services are performed does not determine the nature of the em-

ployment. Cooks and house maids are domestic servants, not because they work indoors, but because they serve the needs of the household. Similarly, one who drives an automobile in bringing supplies from market or in disposing of waste materials or who raises vegetables and produce for use on the estate is a domestic servant in the broader sense contemplated by the act. Growing flowers for the delight and pleasure of the family of the owners is the same kind of service. Where, as here, the grounds, though extensive, are maintained as the curtilage to the mansion house and for the comfort and pleasure of the occupants, they who thus minister to the needs of the owners, according to the standard of living established by them, are domestic servants within the purview of the act.

*See also, Gunter v. Mersereau,* 7 Or.App. 470, 491 P.2d 1205 (1971) (concluding that a live-in nurse's aide was excluded from coverage as a domestic servant); 1C Larson, Workmen's Compensation Law §§ 50.21, 50.30 (grouping domestic service with other "nonbusiness" employments, and explaining the policy reasons for exclusion from Workmen's Compensation coverage).[2]

We believe the rule to be that if the master is regularly using his servant's labor in a commercial enterprise, that is, attempting to profit in an entrepreneurial capacity from the labor of the servant, then the master is an "employer" within the A.R.S. § 23–902(A) definition, *supra,* notwithstanding the place where the servant works or the nature of his duties. On the other hand, if the master is the sole consumer of the servant's labor, and that labor is directed to the construction, maintenance or re-

pair of the master's private properties or care of the master's family, and that labor is not within the usual trade, business, profession or occupation of the master, then the servant is a "domestic servant" under the A.R.S. § 23–902(A) exemption.

This conclusion, we believe, is mandated by the familiar principle that the purpose of workmen's compensation is to place the burden of injury from industrial causes upon industry. See *Lewis v. Industrial Commission,* 93 Ariz. 324, 327, 380 P.2d 782, 783–84 (1963). Thus, in *Lewis,* a servant hired to remodel the master's residence for aesthetic pleasure and not for resale was held to be excluded from compensation coverage. Also, in *Cooper v. Industrial Commission,* 74 Ariz. 351, 355, 249 P.2d 142, 145 (1952), a parttime yardman was not counted as an "employee" in determining his employer's status under the compensation law. In *Stephens v. Industrial Commission,* 26 Ariz.App. 192, 194, 547 P.2d 44, 46 (1976), a master who hired a servant to build a prefabricated personal residence was held not to be an "employer" under A.R.S. § 23–902(A). In *Torres v. Industrial Commission, supra,* a domestic servant was held exempt even though she worked several days a week at her employer's business. Finally, in *Johnson v. Industrial Commission, supra,* we affirmed an award finding that the employee with both inside and outside duties was an exempt domestic servant under the statute. It is upon the spirit of these cases that we rely for our definition of "domestic servant."

Having defined domestic service in this manner, we turn to the evidence of

2. Larson, in his treatise, considers the following cases:

The courts have consistently held that compensation acts do not apply in such instances. The examples that can be drawn from decided cases cover a range as varied as the hypothetical cases just suggested: a carpenter helping to build or remodel the employer's own residence; a practical nurse called in to look after the employer's husband; a handyman working on a country estate; a plasterer redecorating the employer's home; a carpenter building a chicken coop on the employer's residential premises; a caretaker looking after a summer home for the owner; a horse trainer working for an owner of a private stable; a chauffeur repairing the owner's car; a repairman fixing a leak in the roof of the employer's house; a man sawing logs for the use of himself and his neighbors; a man helping a farmer store ice for the farmer's own use; a painter painting a barn on the employer's residential premises; and a gamekeeper employed by the lessee of hunting privileges to guard against poaching. (Footnotes omitted).

record presented herein. All testimony indicates that Mrs. Rector had no trade, business or occupation. She was simply a wealthy woman whose financial circumstances allowed her to own several personal residences. She employed her handyman as needed about these residences with no intent to exploit his labor by reselling the homes at a profit. Under these circumstances, we hold that the evidence supported the administrative law judge's determination that Mr. Griebel was a "domestic servant" under this exemption.

Petitioner contends that the mere fact that Mrs. Rector loaned her servant to her fiance Mr. Dayton was enough to take Mr. Griebel out of the domestic servant category. This might be true, if Mr. Dayton had intended to exploit Mr. Griebel's labor for financial gain. The record shows, however, that Mr. Dayton's mining claim was not even a saleable piece of property; it had no value except as a recreational home for the Daytons. Thus, Mr. Griebel was no less a domestic servant in Mr. Dayton's service than in Mrs. Rector's. Further, the evidence did not establish that Mr. Griebel was traveling to Mr. Dayton's mining claim at the time he was killed.

On review, we find that the findings of the administrative law judge were supported by the evidence and the law of Arizona.[3] Therefore, the award is affirmed.

CONTRERAS and FROEB, JJ., concur.

---

**3.** Because of our disposition of this appeal, we need not address the alternative finding that Mrs. Griebel waived her right to workmen's compensation by the unauthorized settlement of third party liability.