965 P.2d 60

ESTATE OF Adolph WESOLOWSKI, Mary Downing–Mollere, Personal Representative, Petitioner Employer,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Robert Clem, Respondent Employee,

Adolph Wesolowski & Barbara Wesolowski, dba Worldwide Artifacts, Respondent Employer,

Special Fund Division/No Insurance Section, Respondent Party in Interest.

NO INSURANCE SECTION/SPECIAL FUND SECTION, Petitioner, Party in Interest,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Robert G. Clem, Respondent Employee,

Adolph Wesolowski, dba Worldwide Artifacts, Respondent Employer,

Estate of Adolph J. Wesolowski, M. Downing–Mollere, Personal Representative, Respondent Employer,

Barbara Wesolowski, Respondent Employer.

Nos. 1 CA–IC 97–0006, 1 CA–IC 97–0009.

Court of Appeals of Arizona, Division 1, Department E.

March 3, 1998.

Review Denied Oct. 20, 1998.

Estate of Adolph J. Wesolowski, M. Downing–Mollere, Personal Representative by Thomas R. Stillwell, Phoenix, for Petitioner Employer, Respondent Employer.

Arizona Industrial Commission, Special Fund Division by Ronald M. Anderson, Phoenix, for Respondent Party in Interest, Petitioner Party in Interest.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Law Office of John F. Day, P.C. by John F. Day, Scottsdale, for Respondent Employee Clem.

## OPINION

FIDEL, Presiding Judge.

¶ 1 When Adolph J. Wesolowski died, Robert G. Clem, an existing household employee, was retained in employment by Wesolowski's estate to maintain the residence and put it in condition to be sold. During the time Clem performed household maintenance for Wesolowski, Wesolowski was not obliged to provide him workers' compensation coverage; employers of "domestic servants" are exempt from the obligation faced by most employers to provide workers' compensation coverage for their employees. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") § 23–902(A) (1995 & Supp.1997). The dispositive question in this proceeding is whether the estate was entitled to the "domestic servant" exemption when it employed Clem to continue to maintain the residence and prepare it for sale.

## I. HISTORY

¶ 2 On July 19, 1994, Claimant Robert G. Clem was engaged in maintenance on the roof of a house when he descended to answer a telephone call, slipped from the ladder to the ground, and sustained the injury that gives rise to these proceedings. From September 1992 until March 1994, Clem had been employed by Adolph J. Wesolowski, the owner, to maintain and repair the house in exchange for lodging and an hourly wage. Clem also provided occasional services for Worldwide Artifacts, a business that Adolph Wesolowski operated from the house; these services included answering business telephone calls.

¶ 3 Adolph J. Wesolowski died on March 14, 1994. Barbara Wesolowski, his widow, testified that she had been married to Adolph less than three years, that they had a prenuptial agreement, and that she had "no interest in any of the estate or [in] Worldwide Artifacts." She believed that all of Adolph's assets went into the estate after his death.

¶ 4 The house needed considerable work before it could be sold. Accordingly, in April 1994, Adolph's "heirs"[1] and Barbara engaged Clem in a written agreement providing that he would paint the house for a specified sum, payable "when there is an account established from which to pay the estate's obligations," and that, in exchange for performing maintenance and security services, Clem could continue to live at the house until it was sold. Clem was performing this agreement when he fell.

¶ 5 In a timely Workman's Report of Injury, Clem claimed that he was injured while working for either the Wesolowski estate or Worldwide Artifacts. Because both were uninsured, the Special Fund Division of the Industrial Commission processed the claim. *See generally* A.R.S. § 23–907(B) (1995 & Supp.1997).

¶ 6 The Special Fund denied compensability on behalf of the estate, Mary Downing–Mollere, personal representative, and on behalf of an entity that it designated as Adolph and Barbara Wesolowski, husband and wife, dba Worldwide Artifacts. Clem protested these denials, and the Industrial Commission, after conducting hearings, accepted Clem's claim against the estate and dismissed his claim against Adolph Wesolowski, dba Worldwide Artifacts, and Barbara Wesolowski.[2] After exhausting the administrative review process, the Special Fund and the estate petitioned for appellate review.[3]

---

1. Because Adolph Wesolowski died testate, the statutory term for his heirs is "devisees." *See* A.R.S. § 14–1201(13), (23) (1995). The term "heirs," a more inclusive term in general usage, was used throughout the underlying proceedings.

2. Based on Barbara Wesolowski's testimony that she did not retain any interest in Worldwide Artifacts and that that entity had passed to the estate, the Administrative Law Judge ("ALJ") modified the caption to delete her as an employ-

er in the claim against Worldwide Artifacts. The Special Fund, however, asserted that she should remain a party in her individual capacity, and as she did not object, the ALJ modified the caption accordingly.

3. As the estate has relied upon the briefs presented by the Special Fund, we will refer to the arguments of the Special Fund for the remainder of this opinion.

## II. PREEMPTIVE SUIT

¶ 7 We first consider the Special Fund's assertion that, because Clem filed a probate claim in superior court against the estate, his workers' compensation claim is jurisdictionally barred by A.R.S. § 23–1024(B) (1995). We find instead that the Special Fund has waived this non-jurisdictional affirmative defense by failing to assert it at a timely stage of Commission proceedings.

¶ 8 In the course of the hearings before the Commission, the Special Fund's counsel elicited testimony from Mary Downing–Mollere, the estate's personal representative, to the effect that Clem had "filed a homeowner's claim for his injuries against the estate." An injured employee of an uninsured employer may sue the employer or file a workers' compensation claim. *See* A.R.S. § 23–907(A)–(B). But if the employee "exercises any option to institute a proceeding in court against his employer," the employee "waives any right to compensation." A.R.S. § 23–1024(B).

¶ 9 When the Special Fund's counsel presented evidence about Clem's probate claim, he was not asserting the defense of preemption pursuant to A.R.S. § 23–1024(B). Instead, counsel represented that his purpose was to establish Clem's bias towards Ms. Downing–Mollere. At no time before the hearings concluded did the Special Fund assert that Clem's probate claim had triggered a preemption pursuant to A.R.S. § 23–1024(B). Indeed, though twice during the hearings the ALJ reviewed the scope of the issues with all counsel, on neither occasion did the Special Fund assert the issue of preemption. Preemption was not asserted until after the ALJ had issued her post-hearing award. Then, in requesting administrative review, the Special Fund moved to dismiss, invoking A.R.S. § 23–1024(B) and attaching exhibits to document Clem's probate claim against the estate. Clem objected to the introduction of post-hearing evidence, and the ALJ sustained the objection and affirmed the award.

¶ 10 This ruling was correct. Section 23–1024(B) provides an "election of remedies defense." *See Spear v. Industrial Comm'n,* 114 Ariz. 601, 603–05, 562 P.2d 1099, 1101–03 (App.1977). The defense is lost if not asserted before an award for a compensable claim is entered. *Id.* at 603, 562 P.2d at 1101. Election of remedies is similarly treated in other areas of law. *See* 28A C.J.S. *Election of Remedies* § 31, at 670 (1996) (characterizing election of remedies as an affirmative defense that is waived unless timely asserted).

¶ 11 The Special Fund waived § 23–1024(B) as an affirmative defense by neglecting to raise it during the hearing process. *See Spear,* 114 Ariz. at 603–05, 562 P.2d at 1101–03; *cf. Magma Copper Co. v. Industrial Comm'n,* 139 Ariz. 38, 45–49, 676 P.2d 1096, 1103–07 (1983) (generally requiring affirmative defense to be raised during hearing process).

## III. CONTRACT WITH ESTATE

¶ 12 The Special Fund asserts that, because Ms. Downing–Mollere signed the April 1994 employment contract as an heir rather than as personal representative of the estate, the estate was not a party to the contract. We disagree. Although Ms. Downing–Mollere testified that she signed the contract only as an heir and denied that she held herself out to be the personal representative, her testimony was contradicted by Clem. Clem's testimony was corroborated by the testimony of Barbara Wesolowski, who was present for the signing. Clem's testimony was also bolstered by the contract's identification of the house as an asset of the estate and by the contract's promise to pay Clem from the assets of the estate. The ALJ had discretion to resolve credibility issues, and expressly did so in Clem's favor. We defer to the ALJ's credibility finding.

¶ 13 The Special Fund points out that Ms. Downing–Mollere's appointment as personal representative had not yet been accomplished when she signed the April 1994 agreement; she was not formally appointed personal representative until June 1994. By statute, however, a personal representative's powers

relate back in time to give acts by the person appointed which are beneficial to

the estate occurring prior to appointment the same effect as those occurring thereafter.... A personal representative may ratify and accept acts on behalf of the estate done by others where the acts would have been proper for a personal representative.

A.R.S. § 14–3701 (1995). Clem's maintenance of the house was clearly intended at the time of signing to benefit the estate, Ms. Downing–Mollere's appointment as personal representative was pending, and Ms. Downing–Mollere held herself out to be signing as the personal representative of the estate. We conclude that, even though Ms. Downing–Mollere had not yet achieved that formal status in April 1994, she bound the estate as a party to the April 1994 agreement with Mr. Clem.

## IV. DID THE ESTATE EMPLOY CLEM IN THE USUAL COURSE OF BUSINESS?

¶ 14  We next consider the argument that Clem's employment by the estate was not subject to the Workers' Compensation Act because Clem was a casual employee and because the estate was a nonbusiness entity incapable of employing anyone "in the usual course of business." The Special Fund derives this argument from A.R.S. § 23–901(5), which defines a covered "employee" as

(b) Every person in the service of any employer subject to the provisions of this chapter, including aliens and minors legally or illegally permitted to work for hire, but not including a person whose employment is both:
(i) Casual.
(ii) Not in the usual course of the trade, business or occupation of the employer.

¶ 15  Also germane is A.R.S. § 23–902(A), which provides:

Employers subject to the provisions of this chapter are ... every person who has in his employ any workers or operatives regularly employed in the same business or

establishment under contract of hire, except domestic servants.... For the purposes of this section "regularly employed" includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer.

■  ¶ 16  We begin by summarily rejecting the argument that Clem was only a "casual employee." Casual employment is both irregular and brief. "Ordinarily, very short employments, of a few hours or days, are considered casual, while duration for several weeks or months is usually in itself enough to remove a job from that category." 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 51.12, at 9–170 to 9–172 (1997) ("Larson"). Here the estate contemplated employing Clem for weeks or months. Clem was not a casual employee.

■  ¶ 17  We turn to the argument that Clem was not employed in the usual course of business of the estate. According to the Special Fund, an estate—a statutory entity consisting of the property of a decedent—is operated by a statutory officer—a court-appointed personal representative—solely for the purpose of disposing of property. *See* A.R.S. § 14–1201(16). Such an entity, the Special Fund argues, has no usual course of business that would subject it as an employer to the Workers' Compensation Act.[4]

¶ 18  We disagree. The Special Fund's argument proves too much. A.R.S. § 14–3715 includes among the enumerated powers of a personal representative the power to:
(24) Continue any unincorporated business or venture in which the decedent was engaged at the time of his death.

At times, when continuing a decedent's business, a personal representative will maintain in employment persons the decedent had employed under contract of hire in the usual course of the business. Because such employees would have been entitled to workers'

---

4.  Clem contends that the Special Fund waived this assertion by failing to present it below. We disagree. Although the Special Fund Division could have articulated its position more clearly, it did assert that an estate was not an employer under A.R.S. § 23–902(A). The ALJ addressed

that argument and quoted that statute in her findings. Curiously, the Special Fund cites only § 23–901(5)(b) and ignores § 23–902(A) in its appellate briefs. The two are interrelated, however, and we address them both.

compensation coverage pursuant to A.R.S. § 23–902(A) when the business was operated by the decedent, they surely do not forfeit their entitlement to such coverage when the operation of the business falls to the estate. *See Jimenez v. Estate of Jimenez*, 79 A.D.2d 798, 435 N.Y.S.2d 113, 114 (N.Y.App.Div. 1980); *King v. Koenig*, 245 A.D. 886, 282 N.Y.S. 315, 316–17 (1935) (an estate must continue to provide workers' compensation coverage for employees of the business when it continues to operate a business of the deceased).[5] In short, an estate *can* constitute a covered employer for the purposes of the Workers' Compensation Act.

¶ 19 This general conclusion does not mean, however, that A.R.S. § 14–3715(24) supports a finding of compensability in this case. We cite that subsection only to demonstrate the overbreadth and invalidity of the argument that an estate can *never* serve as an employer subject to the Workers' Compensation Act. Subsection 24 is inapplicable to this case because Clem does not argue on appeal, nor did the ALJ find, that he was engaged on behalf of the estate in the business of World-wide Artifacts when he fell; nor does Clem argue on appeal, nor did the ALJ find, that the estate continued to operate Worldwide Artifacts or any other business after Adolph Wesolowski died. The only employment that Clem identifies on appeal as his compensable employment for the estate was his paid endeavor to renovate the residence in anticipation of its sale in order to "maximize [the return] . . . for the benefit of the beneficiaries [of the estate]."[6] Clem does not argue, nor does the evidence suggest, that Adolph Wesolowski operated, or the estate continued, a business of residential rehabilitation and resale. Thus, Clem's employment at the

Wesolowski residence falls outside the scope of A.R.S. § 14–3715(24).

¶ 20 We come then to the question whether any statute supports the conclusion that the estate was subject to the Workers' Compensation Act when it employed Claimant to improve the house for sale. The ALJ correctly identified the relevant statute as A.R.S. § 23–902(A). That section defines as employers subject to the Act those who have "regularly employed" at least one worker "in the usual trade, business, profession or occupation of an employer." A.R.S. § 23–902(A). Employers of "domestic servants" are specifically exempted. *Id.*

¶ 21 A "business" in this context need not be entrepreneurial. *See Greenway Baptist Church v. Industrial Comm'n*, 130 Ariz. 482, 484, 636 P.2d 1264, 1266 (App. 1981). According to Larson, the purpose of requiring a covered employer to have a trade, business, profession, or occupation is to insulate "householders" from liability for workers' compensation. *See* 4 Larson § 50.21, at 9–129 to 9–134. Arizona case law is consistent with this interpretation. In every case that has applied § 23–902(A) to exclude an employer from the Act, the employer was a householder. *See Lewis v. Industrial Comm'n*, 93 Ariz. 324, 380 P.2d 782 (1963) (householder employing worker to remodel home is not employer subject to Act); *Cooper v. Industrial Comm'n*, 74 Ariz. 351, 354–56, 249 P.2d 142, 144–45 (1952) (householder employing carpenter to remodel private residence not employer subject to Act); *Griebel v. Industrial Comm'n*, 133 Ariz. 270, 650 P.2d 1252 (App.1982) (defining "domestic servants" to include workers engaged in construction, maintenance, or repair of householder's home); *Stephens v. Industrial*

---

**5.** We note that the applicable New York statute defines covered employers to include legal representatives of deceased employers. *See* N.Y. Workers' Compensation Law § 2(3) (McKinney 1992). In *King*, the court relied upon this definition to support the conclusion that an executrix was a covered employer. *See King*, 282 N.Y.S. at 316–17.

**6.** A.R.S. § 14–3715 permits a personal representative to:
(7) Make ordinary or extraordinary repairs or alterations in buildings or other structures, de-

molish any improvements, raze existing or erect new party walls or buildings[;] and
. . . .
(21) Employ persons, including attorneys, auditors, investment advisors or agents . . . to advise or assist the personal representative in the performance of his administrative duties, act without independent investigation upon their recommendations and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary.

*Comm'n,* 26 Ariz.App. 192, 193–94, 547 P.2d 44, 45–46 (1976) (householder constructing personal residence not employer subject to Act).

¶ 22  Was Clem the estate's business employee or its "domestic servant"? We find it helpful in approaching this question to consider (1) the nature of the estate's endeavor and (2) the employee's status when he engaged in similar employment for the decedent. We have indicated that, when an estate takes over and manages a decedent's business, retaining business employees, the estate is a covered employer and is subject to the Act. But in this case, as we have also indicated, there is no evidence that the estate took over or managed any business of the decedent. The estate instead engaged only in the routine administrative act of preserving an asset—the house—and preparing it for sale. As for the nature of Clem's employment, the estate retained Clem at the residence to perform maintenance and repairs comparable to those he had performed as Wesolowski's household employee. Just as Clem was not entitled under A.R.S. § 23-902(A) to receive workers' compensation coverage for those services when the household was maintained by the decedent, we conclude that he was similarly unentitled to such coverage when the maintenance of the household passed to the estate. That the estate intended to sell the house did not, in our view, transform Clem from a household employee to a business employee; nor did it turn residential maintenance and repair into a "usual trade, business, profession, or occupation" of the estate. A.R.S. § 23-902(A). We therefore conclude that the Industrial Commission erred in finding that the estate was a covered employer under the Act, and we set aside that portion of the award.

## V. THE CLAIM AGAINST WORLDWIDE ARTIFACTS

¶ 23  Clem argues that, if he was not an employee of the estate, "then the court must find, based upon the transcript of testimony, that [he] was an employee of Mary Downing–Mollere and Barbara Wesolowski and/or Worldwide Artifacts."

¶ 24  We find no merit to this argument. First, we find that Clem *was* an employee of the estate, but not an employee entitled to workers' compensation. Thus, it is not clear that Clem's argument even applies. Second, Clem does not support his argument by citing to any facts of record that establish his employment by Worldwide Artifacts or its owners at the time of his injury.[7] Third, the ALJ specifically found that Barbara Wesolowski was not Clem's employer, and that Clem was not performing a job for Adolph Wesolowski, dba Worldwide Artifacts, at the time of his injury. The ALJ dismissed both claims, and Clem has neither asserted nor demonstrated that the ALJ abused her discretion in so doing. As for Clem's passing assertion on appeal that he may have been employed by Ms. Downing–Mollere, Clem never made this claim to the Industrial Commission, and it is too late to do so here.

¶ 25  Ordinarily, when we set aside an award for any reason, we set the award aside in its entirety and do not search for affirmable parts. *See* A.R.S. § 23-951(D) (1995); *Magma Copper Co. v. Naglich,* 60 Ariz. 43, 57, 131 P.2d 357, 363 (1942). When, however, a consolidated decision separately disposes of severable claims, this court may severably dispose of them upon review. *Professional Furniture Serv. v. Industrial Comm'n,* 133 Ariz. 206, 209, 650 P.2d 508, 511 (App.1982). This is such a case.

¶ 26  For the foregoing reasons, we set aside the Industrial Commission award finding a compensable claim against the estate, but affirm the Industrial Commission's dismissals of the claim against Adolph J. Wesolowski, dba Worldwide Artifacts, and the claim against Barbara Wesolowski.

GERBER and THOMPSON, JJ., concur.

---

7.  Barbara Wesolowski testified, as we have indicated, that she had no interest in Worldwide Artifacts after Adolph's death. Ms. Downing-Mollere testified that Worldwide Artifacts was a partnership between herself and Adolph Wesolowski that terminated upon Adolph's death.