NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DAVID F. CARDENAS, SR.*, DAVID F. AND JANE DOE CARDENAS**,
AB PLUMBING, LLC***, D&C INVESTMENTS****, *Petitioner Employers*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

JUAN M. CUEN AMAVIZCA (D'CD), *Respondent Employee,*

SPECIAL FUND DIVISION/NO INSURANCE SECTION, *Respondent
Party in Interest.*

No. 1 CA-IC 18-0027
FILED 2-7-2019

---

Special Action - Industrial Commission

ICA Claim No.  20170-270196**
20170-330001*
20170-330002****
20170-330003***
Carrier Claim No. NONE
Jacqueline D. Wohl, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Hendrickson & Palmer, P.C., Phoenix
By Adam P. Palmer
*Counsel for Petitioner Employers*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Law Offices of Arthur V. Gage, P.C., Tucson
By Arthur V. Gage
*Counsel for Respondent Employee*

Special Fund Division/No Insurance Section, Phoenix
By Scott J. Cooley
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

T H O M P S O N, Judge:

¶1 This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review awarding the respondent employee's/decedent's widow Alma Angelina Sanz-Mata (Mata) death benefits. Three issues are presented on appeal:

> (1) whether David F. Cardenas, Sr., was an employer subject to the Arizona Workers' Compensation Act
>
> (2) whether the decedent's injury arose out of his employment; and
>
> (3) whether the decedent was a domestic servant at the time of his injury.

Because we find no legal error and the ALJ's award is reasonably supported by the evidence of record, we affirm.

**I. JURISDICTION AND STANDARD OF REVIEW**

¶2 This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2016), 23-951(A) (2012), and Arizona Rule of Procedure for Special Actions 10 (2014). In reviewing

2

findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

## II. PROCEDURAL AND FACTUAL HISTORY

**¶3** On November 6, 2016, the decedent was attacked and killed by a day laborer working with him on a rental property owned by David F. Cardenas, Sr. (Cardenas). At the time of his death decedent was using clothing, tools and equipment supplied by AB Plumbing, LLC, a business owned by Cardenas. Neither Cardenas nor AB Plumbing had workers' compensation insurance coverage. Decedent's widow filed a claim for dependent's benefits, which was accepted by the respondent party in interest, Special Fund Division/No Insurance Section (Special Fund). Cardenas timely protested and requested an ICA hearing**.** The ALJ subsequently held hearings for testimony from Mata and Cardenas.

**¶4** Mata testified that the decedent regularly worked for Cardenas as a handyman performing plumbing, electrical work, and remodeling. She stated that her husband collected rents and served eviction notices for several rental units owned by Cardenas, and he also periodically worked for Cardenas's plumbing business, AB Plumbing. Mata testified that Cardenas paid the decedent $10 per hour in cash, once a week. Cardenas also provided the decedent with a uniform and use of an AB Plumbing work truck, which the decedent picked up and dropped off daily at Cardenas's house. Mata stated that when one of Cardenas's projects required a day laborer, the decedent would pick one up at a Tucson church.

**¶5** Mata testified that Cardenas paid the decedent to work at a rental property on Ft. Lowell Road on Friday, November 4, and Saturday, November 5, 2016. On Sunday, November 6, 2016, the decedent was again scheduled to work at the Ft. Lowell property, and he left for work wearing his company uniform. Police detectives came to her house later that day and told her that her husband was dead. Mata filed voluminous documentary evidence in support of her testimony, including daily notes the decedent made regarding jobs he performed for Cardenas and AB Plumbing and rental receipts for the rents he collected.

**¶6** Cardenas testified that the decedent was an illegal alien, so he could not legally hire him. Instead, he entered a "reciprocal agreement"

with the decedent whereby the decedent worked for Cardenas in exchange for housing and monthly expenses. Cardenas stated that ninety-five percent of the time, the decedent worked for and was paid by AB Plumbing, and AB provided the decedent with work clothes,[1] tools and a truck.

¶7        Cardenas testified that on November 4, and 5, 2016, the decedent worked on behalf of AB Plumbing at his Ft. Lowell property laying sewer pipe for the bathrooms.  On November 6, 2016, the decedent was supposed to continue working on the same job, this time laying a floor over the pipes.  Cardenas indicated that decedent's work for this project would be paid by AB Plumbing, which in turn would bill Cardenas for the project.  Cardenas stated that he directed the decedent to pick up a day laborer to help him perform that work.  Cardenas agreed that the decedent was wearing his AB-provided work clothes and driving an AB truck at the time of his murder.

¶8        Below, Cardenas testified that he did not employ the decedent.  Cardenas also argued that AB Plumbing did not have employees and stated it did not carry workers' compensation insurance.  Cardenas testified that any work the decedent performed for him was on a contract basis, and he paid the decedent by the job.  Cardenas testified that he owns eight rental units, which he takes care of himself.  He testified that the decedent helped him with his rentals "in a minimal way," because they were close friends.

¶9        At the end of the hearings, the parties filed post-hearing memoranda. The ALJ found decedent was employed by both Cardenas, individually and as part of the marital community, and AB Plumbing and entered an award for a compensable claim.[2] Cardenas timely requested administrative review, but the ALJ summarily affirmed the award. Cardenas next brought this appeal.

¶10        On appeal, petitioners concede decedent was an employee of AB Plumbing, but deny he was also employed by Cardenas, or that the assault and resulting death arose out of any employment activity. Cardenas asserts there is no evidence that on the day of the murder, decedent worked for Cardenas either individually, as part of the marital community, or as the owners of the Fort Lowell rental property.

---

[1] The work clothes did not have a logo identifying AB Plumbing.

[2]  D&C Investments was dismissed from this claim.

## III. DISCUSSION

¶11       When an employee is killed because of a compensable industrial injury, his dependents are entitled to receive death benefits pursuant to the Arizona Workers' Compensation Act. *See* A.R.S. § 23-1021(A). A benefit applicant must prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512 (App. 1985). Dependents filing for death benefits must show that the death resulted from an accident arising out of and in the course of employment. *Gaumer v. Indus. Comm'n*, 94 Ariz. 195, 199 (1963).

¶12       Petitioners first argues that the ALJ erred by finding that he was the decedent's employer at the time of his assault, because the decedent worked solely for AB Plumbing. Cardenas asserts that he did not regularly employ any workers in a "trade, business, profession or occupation." *See* A.R.S. § 23-902(A). Mata responds that at the time of the assault, the decedent was working on one of Cardenas's rental properties, and the decedent was also robbed of rent money that he had collected the night before for Cardenas.

¶13       The record demonstrated that Cardenas had eight rental units, and at Cardenas' direction and expense the decedent collected rent, served eviction notices, and performed repairs on those properties. Cardenas testified that the decedent would "report when the tenants would complain they had a leaky roof or a problem with a door… and sometimes… he would repair the item on his own and tell me that… he took care of it."

¶14       The ALJ found that the decedent was injured while working on a rental property owned by Cardenas, and that the decedent performed both plumbing and other construction work on Cardenas's rental properties. The ALJ specifically found the decedent's wife credible when she "testified that the… [decedent] worked both for the defendant's plumbing company and for the defendant's benefit on the rental properties." We conclude that the record contains reasonable evidence to support the finding that one of Cardenas's "usual" businesses involved the renovation and rental of properties and that he employed the decedent in this endeavor.

¶15       Petitioners next argue that the decedent's death did not arise out of his employment, because there is no evidence that the assault was related to the work activity. *See, e.g., Colvert v. Indus. Comm'n*, 21 Ariz. App. 409, 410-11 (1974) (assault-related injuries are compensable if altercation

arises out of a work-related dispute). The Arizona's Workers' Compensation Act provides compensation for injuries that arise out of and in the course of claimant's employment. *See* A.R.S. § 23-1021(A); *Finnegan v. Indus. Comm'n,* 157 Ariz. 108, 110 (1988).

¶16 "Arising out of" refers to the origin or cause of the injury, while "in the course of" refers to the time, place, and circumstances of the injury in relation to the employment. *See, e.g., Peter Kiewit Sons' Co. v. Indus. Comm'n*, 88 Ariz. 164, 168 (1960); *Scheller v. Indus. Comm'n*, 134 Ariz. 418, 420 (App. 1982). These factors are part of a single test of work connection and must be considered together. *See Noble v. Indus. Comm'n,* 188 Ariz. 48, 52-53 (App. 1996); Lex K. Larson, et. al., *Larson's Workers' Compensation Law* § 29.01, at 29-2 to -7 (2018).

¶17 To "arise out of the employment," the injury must result from some risk of the employment or be incidental to the discharge of the duties thereof. *Lane v. Indus. Comm'n,* 218 Ariz. 44, 47 ¶ 10 (App. 2008). Whether an activity is related to the claimant's employment depends upon the totality of the circumstances and, as directed by our supreme court, requires an inquiry into the following:

> Did the activity inure to the substantial benefit of the employer? … Was the activity engaged in with the permission or at the direction of the employer? … Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? … Could the employee reasonably expect compensation or reimbursement for the activity engaged in? … And, finally, was the activity primarily for the personal enjoyment of the employee?

*Delgado v. Indus. Comm'n*, 183 Ariz. 129, 131 (1994).

¶18 In this case, the evidence established that the decedent had steadily worked for Cardenas for many years. For two days prior to the assault, he had been laying sewer pipe at a rental property owned by Cardenas. According to Cardenas, decedent's work benefitted AB Plumbing, as Cardenas would pay AB Plumbing for decedent's work. On the day of the assault, the decedent was supposed to complete that project by installing a floor over the new pipes. Cardenas told him to pick up a day laborer on the way to the job site to help. While installing the floor, the decedent was assaulted and robbed by the day laborer. He subsequently died from his injuries. The necessity of using a day laborer to help with the floor was at the express direction of Cardenas and was both a risk of the

decedent's employment and incidental to the discharge of his employment duties.

**¶19**      Regarding the circumstances surrounding this activity, the work on the rental property inured to Cardenas's substantial benefit because the sooner the renovations were completed, the sooner the property could begin to earn rental income. Cardenas spoke to the decedent on the morning of the assault and directed him to pick up a day laborer on his way to the rental property. For that reason, the decedent acted with Cardenas's permission and at his direction. The evidence also established that Cardenas/AB Plumbing provided the truck and tools the decedent used for his work on the rental property. The decedent's widow testified that Cardenas had paid her husband for the previous two days of work at the same property, so there was a reasonable expectation that Cardenas or AB Plumbing would pay the decedent for his work on the floor. There is no evidence that the work was either donated or for the decedent's personal enjoyment.

**¶20**      In this case, the decedent's injury arose out of working alone with an unknown day laborer whose assistance was required to install a floor at Cardenas's rental property. The injury occurred at the job site, during work hours, while the decedent was working. Further, the totality of the circumstances establish that the activity was related to the decedent's employment. We conclude that there is sufficient evidence to support the ALJ's finding that the assault arose out of employment.

**¶21**      Cardenas last argues that the decedent was a domestic servant, and therefore, statutorily excluded from receiving workers' compensation benefits. *See* A.R.S. § 23-902(A). He cites *Griebel v. Industrial Commission,* 133 Ariz. 270 (App. 1982), in support of this argument. In *Griebel*, a wealthy family employed a groundskeeper/handyman to care for their multiple residences. When the groundskeeper was killed in a motor vehicle accident, his widow brought a claim for death benefits. Her claim was denied, and on appeal, this court affirmed. We held:

> If the master is regularly using his servant's labor in a commercial enterprise, that is, attempting to profit in an entrepreneurial capacity from the labor of the servant, then the master is an "employer" within the A.R.S. § 23-902(A) definition…. On the other hand, if the master is the sole consumer of the servant's labor, and that labor is directed to the construction, maintenance or repair of the master's

private properties or care of the master's family, and that labor is not within the usual trade, business, profession or occupation of the master, then the servant is a "domestic servant" under the A.R.S. § 23-902(A) exemption.

133 Ariz. at 273.

**¶22**　　Cardenas argues that he did not operate a rental business, nor did he make any income from his rental properties. In this case, the ALJ impliedly rejected Cardenas's argument that he did not have a rental property business when he specifically adopted the widow's contrary testimony. *See Pearce Dev. v. Indus. Comm'n*, 147 Ariz. 582, 583 (1985) (ruling that factual findings can be implicit in an ALJ's award). We conclude that this finding was supported by the evidence of record. For these reasons, this court's opinion in *Griebel* supports the ALJ's award, and the decedent was not Cardenas's domestic servant.

**¶23**　　For all the foregoing reasons, we affirm the ALJ's award against David F. Cardenas, Sr., David F. Cardenas, Sr. and Jane Doe Cardenas, and AB Plumbing.

